RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0003p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 13-3863

JACK COPPENGER, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:12-cr-00278-1—John R. Adams, District Judge.

Argued: December 4, 2014

Decided and Filed: January 7, 2015

Before: SILER, SUTTON, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Evan B. Smith, APPALACHIAN CITIZENS' LAW CENTER, Whitesburg, Kentucky, for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Evan B. Smith, APPALACHIAN CITIZENS' LAW CENTER, Whitesburg, Kentucky, for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. Jack Coppenger, Lisbon, Ohio, pro se.

_____

## OPINION

_____

McKEAGUE, Circuit Judge. Defendant Jack Coppenger, Jr., pled guilty to conspiracy to commit mortgage fraud. Pursuant to the parties' plea agreement, the government agreed not to recommend a sentence in excess of the applicable advisory Guidelines range, which was 78 to 97

months' imprisonment. Nonetheless, the district court used information in presentence reports prepared for Coppenger's co-conspirators to vary upward and sentenced Coppenger to 120 months in prison. Coppenger contends the sentence is substantively and procedurally unreasonable. He asserts two claims of error: the district court impermissibly treated co-conspirators as victims; and the district court failed to provide him with notice and opportunity to respond to its intent to vary upward based on information contained in co-conspirators' presentence reports. Because the district court abused its discretion when it failed to provide Coppenger meaningful opportunity to respond to information used to vary upward, we vacate and remand for resentencing.

## I

In 2005, Coppenger initiated a mortgage fraud scheme to profit from buying and selling millions of dollars' worth of real estate by submitting false information to federally insured lenders. The "manner and means" of the scheme are detailed in Coppenger's plea agreement. To begin, Coppenger entered into a $13,200,000 contract to purchase two parcels of property in Panama City, Florida. To finance the purchase, Coppenger conspired with three mortgage officers and thirty-three "straw buyers." The straw buyers applied for mortgages on lots within one of Coppenger's Panama City parcels; falsely claimed they intended to use the lots as their secondary residences; falsely claimed that down payments were made; falsely claimed that they would be personally responsible for making monthly mortgage payments; received approval for the mortgages; and delivered mortgage proceeds to Coppenger. The mortgage officers worked with Coppenger to make monthly mortgage payments on behalf of the straw buyers, and to provide the straw buyers with either upfront cash payments or the promise of a future benefit, such as sharing in the profits from the ultimate sales of the properties.

By May 2006, Coppenger stopped making mortgage payments for the straw buyers and the mortgage loans went into default, resulting in a loss of more than $32 million. Soon thereafter, Coppenger approached the authorities to confess and provide information describing the scheme. Subsequently, the government charged thirty-five co-conspirators with felony conspiracy. All pled guilty. The district court spared most of the co-conspirators prison time, but required all to pay fines. In 2012, the government charged Coppenger with two counts of

conspiracy: conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349; and conspiracy to defraud the United States of income taxes, in violation of 18 U.S.C. § 371. Coppenger pled guilty to both counts.

Before sentencing, a presentence report was prepared in compliance with Federal Rule of Criminal Procedure 32(d). The government requested a downward departure based on Coppenger's substantial assistance and the parties agreed that Coppenger should be sentenced at offense level 28, and criminal history category I. This yielded a Guidelines range of 78 to 97 months' imprisonment. Both parties sought a sentence within this range. However, the district court relied on confidential, undisclosed information from co-conspirators' presentence reports to vary upward from this range. R. 31, Sent. Tr. at 15–16, 21–25, Page ID 193–94, 199–203.

The district court stated that it had already sentenced most of the co-conspirators who were led into the conspiracy by Coppenger. "[F]or the record and any reviewing court," the court explained that it had reviewed thirty-three presentence reports, twenty-eight to thirty of which were prepared for the straw buyers, "to go back and refresh my recollection about their history, their background, and how it was that they came to be involved in all this." *Id.* at 15, Page ID 193. Referring to information contained in the presentence reports, the court characterized the straw buyers as "unsophisticated," "law-abiding," "decent hardworking people" who had "give[n] back to their community through their churches, through their schools, through their just daily lives." *Id.* at 21–22, Page ID 199–200. The court emphasized that "[m]any of them were not looking to get rich," but "were looking for some way to make monies for their retirement, for college tuition, some of them to donate to worthy causes." *Id.* at 22, Page ID 200. The court characterized the straw buyers as having been "caught up" in Coppenger's scheme, a scheme motivated by his "pure greed," and "desire to live a high life." *Id.* The court determined that the lives of not only the straw buyers, but also their families, their spouses, and their children had been "devastated" and "forever altered." *Id.* at 21–22. The court referred in particular to a long-term teacher who can no longer teach and a school administrator whose career is over. Among the harms visited on the straw buyers generally, the court identified economic harm, loss of reputation, lost jobs, lost careers, enormous restitution obligations, and obligations to pay attorney fees and costs.

Based on this information, and considering the sentencing factors set forth at 18 U.S.C. § 3553(a), the court, in the interest of just punishment, varied upward from the high end of the advisory Guidelines range by 23 months, sentencing Coppenger to 120 months on count 1, and 60 months on count 2, to be served concurrently. When the court asked at the end of the sentencing hearing, per *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), whether there was any additional objection, Coppenger's counsel responded, "No, Your Honor."

**II**

Coppenger challenges his sentence as substantively and procedurally unreasonable. Sentencing challenges are reviewed for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007); *see also United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007). An abuse of discretion occurs when the reviewing court is left with the definite and firm conviction that the sentencing court committed a clear error of judgment. *United States v. Batti*, 631 F.3d 371, 379 (6th Cir. 2011). An abuse of discretion occurs when a sentencing court relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard. *United States v. Munoz*, 605 F.3d 359, 366 (6th Cir. 2010).

A court will be deemed to have abused its discretion and imposed a substantively unreasonable sentence if it imposed a sentence arbitrarily, based on impermissible factors, or unreasonably weighed a pertinent factor. United States v. Adkins, 729 F.3d 559, 563 (6th Cir. 2013). Coppenger argues that the district court committed substantive legal error by imposing a sentence based on an impermissible factor: treating Coppenger's co-conspirators as victims to justify the upward variance.

A court will be deemed to have abused its discretion and imposed a procedurally unreasonable sentence if it failed to calculate the Guidelines range properly; treated the Guidelines as mandatory; failed to consider the factors prescribed at 18 U.S.C. § 3553(a); based the sentence on clearly erroneous facts; or failed to adequately explain the sentence. *Adkins*, 729 F.3d at 563. Coppenger contends the district court committed procedural error by varying from the advisory Guidelines based on information contained in undisclosed, inaccessible presentence reports without giving him notice and fair opportunity to respond.

Because Coppenger failed to preserve this procedural objection by first giving the district court the opportunity to address and remedy it, we review only for plain error. *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008). To demonstrate plain error, an appellant must prove: (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*. at 386.

**III**

We first address Coppenger's procedural-unreasonableness claim that he was improperly denied notice and opportunity to respond to information relied on to impose the upward variance. The parties' arguments revolve initially around the import of the Supreme Court's ruling in *Irizarry v. United States*, 553 U.S. 708 (2008). In *Irizarry*, the Court construed the requirement in Federal Rule of Criminal Procedure 32(h) that the sentencing court give the parties reasonable notice "[b]efore the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission." Fed. R. Crim. P. 32(h). The Court held that this notice requirement applies only to "departures" and does not apply in connection with a "variance" from the sentencing range, such as we have here. *Id.* at 714–15. Hence, per *Irizarry*, advance notice is not required under Rule 32(h) before a sentencing court elects, on consideration of the factors in 18 U.S.C. § 3553(a), to impose a sentence that varies from the advisory Guidelines range.

Coppenger contends that *Irizarry* does not necessarily control. He couches his argument in terms of Rule 32(i)(1)(B), which requires the sentencing court, "[a]t sentencing," to "give to the defendant and an attorney for the government a written summary of—or summarize in camera—any information excluded from the presentence report under Rule 32(d)(3) on which the court will rely in sentencing, and give them a reasonable opportunity to comment on that information." Coppenger was given neither a written summary nor a summary in camera of the confidential information on which the district court relied in varying upward. He contends this failure denied him a "reasonable opportunity to comment on that information."

Rule 32(i)(1)(B) does not impose a categorical requirement of *prior* notice of the court's intent to vary based on information not contained in the presentence report. *See United States v. Rossi*, 422 F. App'x 425, 430–31 (6th Cir. 2011). However, the rule clearly requires the sentencing court to use a procedure that affords the defendant a reasonable opportunity to respond. This is consistent with our recognition in *Rossi* that *Irizarry* "left open the possibility of relief when a party demonstrates that the facts or issues on which the district court relied to impose a variance came as a surprise and that his or her presentation to the court was prejudiced by the surprise." *Id.* at 432 (citing *Irizarry*, 553 U.S. at 715–16). Indeed, a procedure that affords the defendant a reasonable opportunity to respond is one that precludes the possibility of prejudicial surprise.

In *Rossi*, however, we denied relief, concluding that the defendant was unable to identify any "relevant issues that he did not anticipate or have the opportunity to address at the sentencing hearing" and did "not indicate what he would have done differently at the sentencing hearing" had he been given "an adequate opportunity to confront and debate the relevant issues." *Id.* at 433. This case is different. Here the district court's *sua sponte* reliance on extraneous information both surprised and prejudiced Coppenger and denied him a meaningful opportunity to respond, in violation of Rule 32(i)(1)(B).

The court's explicit consideration of the offense conduct's impact on the co-conspirator straw buyers was not only novel, but was neither signaled in the presentence report nor otherwise reasonably foreseeable. We are not convinced that the district court "treated the co-conspirators as victims" in any impermissible way. In fact, the court expressly acknowledged that "the straw buyers . . . cannot legally be determined to be victims." R. 31, Sent. Tr. at 16, Page ID 194. Nor has Coppenger persuaded us that consideration of the offense conduct's impact on the straw buyers and their families is outside the scope of the sentencing court's consideration of "the nature and circumstances of the offense" under 18 U.S.C. § 3553(a)(1).[1]

---

[1]The court did not treat the co-conspirators as "victims" in a restitutionary sense, as was deemed improper in *United States v. Lazarenko*, 624 F.3d 1247, 1251–52 (9th Cir. 2010), and *United States v. Reifler*, 446 F.3d 65, 127 (2d Cir. 2006). Nor did the court's consideration of the impact on co-conspirators amount to impermissible "double counting" of the grounds on which the court increased the base offense level due to Coppenger's leadership role in the conspiracy. *See United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (recognizing that the same factors that justify an upward departure may, in the exercise of sentencing discretion, be evaluated differently in imposing an upward variance); *United States v. Smith*, 516 F.3d 473, 476 (6th Cir. 2008) (recognizing that

Yet, the district court undeniably placed heavy, if not exclusive, reliance on this consideration to justify the 23-month variance. In the interest of "just punishment," the variance was necessary, in the court's words, because: "they all have been victimized and just devastated by your activity" . . . "[i]t has been an extraordinary harm that you've done to every one of these—collectively, this group of people" . . . "[a]nd I can't help but feel an enormous amount of sympathy." R. 31, Sent. Tr. at 21, 23, Page ID 199, 201. The court's sympathy for Coppenger's co-conspirators as "victimized" in a retributive sense—i.e., for purposes of assessing the seriousness of the offense and increasing punishment—was anything but a "garden variety consideration" that competent defense counsel should be held to have anticipated. *See Irizarry*, 553 U.S. at 716 (quoting *United States v. Vega-Santiago*, 519 F.3d 1, 5 (1st Cir. 2008) (en banc)). In this sense, the district court's *sua sponte* justification for an upward variance, despite the parties' agreed-to expectation of a within-Guidelines sentence, albeit not impermissible, was undeniably a "surprise."

The government's contention that Coppenger was not surprised because he was aware of the circumstances of the straw buyers he personally recruited and the impact his offense conduct had on them finds no support in the record. Coppenger and his counsel clearly could not know the specific facts detailed in the presentence reports on which the court so heavily relied. Nor could Coppenger or his counsel anticipate the weight the court ultimately assigned to these considerations. Coppenger has adequately demonstrated the sort of "surprise" referred to in *Irizarry* and *Rossi* that may require special procedural protections.

To show prejudice, Coppenger contends the district court's failure to comply with Rule 32(i)(1)(B) denied him opportunity to undertake the requisite legal research and factual inquiry necessary to formulate an effective response, potentially including legal argument, cross-examination, and presentation of responsive testimony. Again, the government concedes that neither Coppenger nor his counsel has seen the contents of the presentence reports used to support the variance, but maintains there was no prejudice because Coppenger knew the co-conspirators.

---

impermissible double counting occurs when precisely the same aspect of the defendant's conduct factors into his sentence in two separate ways, but that two enhancements may legitimately be based on distinct aspects of the defendant's conduct or distinct harms caused thereby).

The government's position ignores the extent to which the district court relied on the contents of the presentence reports. The court did not merely make passing reference to the impact of Coppenger's offense conduct on the co-conspirators. As detailed above, the sentencing judge acknowledged having reviewed thirty-three presentence reports, to refresh his recollection, before describing the "extraordinary harm" that justified the variance—an explanation that spans five pages in the sentencing transcript and summarizes the factual bases for the court's impressions. This procedure, relying on specific detailed information not disclosed to the defendant, is fundamentally at odds with the adversarial scheme established in Rule 32, which implicitly recognizes "the right to review other information relied on by a court at sentencing." *United States v. Hamad*, 495 F.3d 241, 245 (6th Cir. 2007). It is at odds with the literal requirements of Rule 32, which we have been vigilant to enforce in order to ensure due process. *See United States v. Roberge*, 565 F.3d 1005, 1011 (6th Cir. 2009); *Hamad*, 495 F.3d at 249. This procedure presents the very situation we described in *Rossi*, based on the teaching of *Irizarry*:

> When a party has a legitimate basis for claiming that the surprise was prejudicial, the appropriate response is for the district judge to consider granting a continuance so that the parties have an adequate opportunity to confront and debate the relevant issues.

*Rossi*, 422 F. App'x at 433 (quoting *Irizarry*, 553 U.S. at 715–16) (alterations and internal quotation marks omitted). We are satisfied that Coppenger has a legitimate basis for claiming prejudice.

Here, as in *Hamad*, the confidential information plainly affected the sentence imposed, and the nondisclosure of the information deprived Coppenger of a meaningful opportunity to respond. *See Hamad*, 495 F.3d at 250–51. Here, in fact, the showing of prejudice is much stronger than in *Hamad*. In *Hamad*, the sentence was vacated due to a Rule 32(i)(1)(B) violation for nondisclosure of confidential sentencing information even though the defendant had been given advance notice and a written summary of the information. The sentencing court in *Hamad* had even offered to disclose the confidential documents to the defendant's counsel. We nonetheless held "(1) that the district court's summary did not give Hamad a meaningful opportunity to contest the allegations [the sealed documents] contained and (2) that any summary

that provided such an opportunity would almost certainly have revealed the documents' sources." *Id.* at 251. *See also United States v. Christman*, 509 F.3d 299, 311–12 (6th Cir. 2007) (following *Hamad*). Here, neither Coppenger nor his attorney was ever offered a written summary or access to the presentence reports containing detailed confidential information on which the district court explicitly relied in varying upward. Coppenger had no meaningful opportunity to respond.[2]

Coppenger having thus shown both surprise and prejudice, we conclude that the process used to impose the variance was procedurally unreasonable. We express no opinion about the appropriateness of the length of the sentence. Yet, we are left with the definite and firm conviction that the district court, by denying Coppenger a meaningful opportunity to respond to the factual bases for the variance, violated Rule 32(i)(1)(B) and committed a clear error of judgment. *See United States v. Garcia-Robles*, 562 F.3d 763, 767–68 (6th Cir. 2009) (holding sentence procedurally unreasonable for denial of meaningful opportunity to respond to *sua sponte* upward variance).

Moreover, for the reasons outlined above, we find not only procedural error, but plain error, that was not harmless. The error not only adversely affected Coppenger's substantial rights, *see United States v. Wilson*, 614 F.3d 219, 223 (6th Cir. 2010) ("A sentencing error affects a defendant's substantial rights when there is a reasonable probability that, but for the error, she would have received a more favorable sentence."), but seriously affected the fairness, integrity and public reputation of the sentencing proceeding as well. *See id.* at 223–26 (finding plain error where sentencing court relied on erroneous information); *United States v. Alexander*, 517 F.3d 887, 889 (6th Cir. 2008) (finding plain error where sentencing court imposed variance without affording opportunity to rebut). We therefore exercise our discretion to grant relief

---

[2]Moreover, underscoring the insufficiency of the procedure used is the fact that the presentence reports the district court explicitly relied on still have not been made part of the record. We, no less than the defendant, are thereby deprived of the means to review the substantive reasonableness of the sentence. We have no way to verify the fairness and accuracy of the district court's characterization of the presentence reports' contents, and no way to review the propriety of the court's use of the information.

notwithstanding Coppenger's failure to object below. The sentence must be vacated and Coppenger is entitled to resentencing.**3**

## IV

The question remains how the district court should proceed on remand. How is the court to fairly and fully consider all relevant circumstances under 18 U.S.C. § 3553(a), which may include the offense conduct's impact on Coppenger's co-conspirators, without infringing the confidentiality attaching to the contents of the co-conspirators' presentence reports? *See U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 12 (1988) (recognizing that some showing of special need is typically required before a defendant's presentence report will be disclosed to a third party). Having highlighted the dictates of Rule 32(i)(1)(B), we will not presume to instruct the court on how it must balance the competing interests. We do not suggest the resentencing must be accomplished without reliance on information contained in the co-conspirators' presentence reports, as was required on remand in *Christman*, 509 F.3d at 312, and *Hamad*, 495 F.3d at 251. We note that if confidential information cannot be disclosed to Coppenger personally, it *may* suffice for the court to provide Coppenger with a written summary of the information it intends to rely on while granting his attorney access to the presentence reports. *See United States v. Murphy*, 530 F. App'x 522, 526–27 (6th Cir. 2013) (finding disclosure of sealed grand jury transcripts to defense counsel, but not to the defendant personally, adequate to safeguard the defendant's substantial rights). These measures would allow counsel to both verify the accuracy of the summary and prepare any appropriate rebuttal. Undoubtedly, other options are available to the court, working with counsel, and we commit the matter to the discretion of the district court.

Accordingly, the judgment of sentence is **VACATED** and the case is **REMANDED** to the district court for resentencing in a manner not inconsistent with this opinion.

---

**3**This result makes it unnecessary to address the merits of Coppenger's substantive-unreasonableness challenge or his alternative theory of relief based on defense counsel's ineffective representation at sentencing (for having failed to object to the district court's flawed procedure at sentencing).