**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0472n.06

No. 16-2268

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 15, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| TRAVON TYRONE MAYBERRY, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | OPINION |
| | ) | |

Before: COLE, Chief Judge; BATCHELDER and MOORE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Travon Mayberry appeals his fifty-four-month sentence for conspiracy and aggravated identity theft. Mayberry and his co-conspirators purchased stolen credit-card numbers that they used to acquire gift cards at various Meijer supermarkets. The fraudulently obtained gift cards were subsequently used to purchase Apple electronics products from Meijer that were then sold for a cash profit. Mayberry pleaded guilty to conspiracy and aggravated identity theft, and his Sentencing Guidelines range was forty-two to forty-eight months of imprisonment. More than two weeks prior to sentencing, the district court issued an order detailing a number of issues that it wanted the parties to address, including its concern about the propriety of the government's loss calculations. At sentencing, the district court announced its intention to depart upward from the Guidelines range because it concluded that the Guidelines failed to account for both the loss attributable to Mayberry and his true culpability. Accordingly, the district court sentenced Mayberry to fifty-four months of

imprisonment.  Mayberry appeals his sentence because he believes the district court violated the notice requirement of Federal Rule of Criminal Procedure 32(h) and he argues that the district court's factual finding that Mayberry was the most culpable defendant in the conspiracy was clearly erroneous.  For the reasons set forth below, we **AFFIRM** Mayberry's sentence.

## I.  FACTS AND PROCEDURE

### A.  Factual History

Travon Mayberry, along with Leon Goodwin, Jr., Sean Young-Perry, and Devin Lindsey Dixon-Ryles, visited various Meijer stores in Michigan and elsewhere between November 27, 2014 and December 11, 2014.  R. 1 (Indictment at 1) (Page ID #1).  Mayberry and his co-conspirators used fraudulently obtained financial information to purchase high-end electronic devices that the group later sold for a cash profit.  *Id.* at 2 (Page ID #2); R. 282 (Presentence Investigation Report "PSR" at 8) (Page ID #1143).[1]  A traditional credit-card-fraud scheme targets individual credit-card holder accounts and then purchases items using that stolen personal data.  This conspiracy was more complex than a traditional credit-card-fraud scheme.  Instead of targeting individual accounts, Mayberry and his co-conspirators purchased credit-card numbers in bulk, likely from overseas websites.  R. 282 (PSR at 8) (Page ID #1143).  The group targeted credit-card numbers from businesses that were located in Michigan because "[t]hese business cards are seldom flagged by fraud detection systems and usually have higher credit limits."  *Id.* Because purchases were made at Michigan Meijer stores, the seemingly in-state purchases were also less likely to trigger the supermarkets' fraud-detection devices.  *Id.*

---

[1]Mayberry never objected to the Probation Officer's factual findings in the PSR, and cited the PSR extensively in his briefing before us.  *See* Appellant Br. at 22.

After obtaining the Michigan-based credit-card numbers, the conspirators encoded the credit-card data "onto strips of existing credit cards or exhausted stored value cards (SVCs)." *Id.* The group then used the fraudulently obtained credit cards to purchase Meijer store gift cards, which could be purchased in amounts as great as $1,000. *Id.* The Meijer gift cards were purchased at self-checkout lanes, which permitted the conspirators to avoid face-to-face interaction with store clerks. *Id.* Finally, "armed with fraudulently obtained, but genuine, Meijer SVC cards the conspirators made face-to-face transaction[s] in the electronics department purchasing Apple devices, which were then sold for cash profit." *Id.*

On November 6, 2014, investigators conducted an unrelated search of Mayberry's girlfriend's apartment. *Id.* There, "[i]nvestigators found several credit cards, a hand written list of 66 bank identification numbers, and a fraudulent California's driver's license." *Id.* The investigation also revealed that "Mayberry has been photographed with a re-encoder [used for uploading stolen credit card numbers to existing cards] plugged into a laptop next to him." *Id.*

## B. Procedural History

Mayberry was indicted along with co-defendants Goodwin, Jr., Young-Perry, and Dixon-Ryles on March 26, 2015. R. 1 (Indictment at 1) (Page ID #1). The three-count indictment charged Mayberry with: (1) Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. §§ 1343, 1349; (2) Access Device Fraud, in violation of 18 U.S.C. §§ 1029(a)(2), 1029(c)(1)(A)(i), and 2; and (3) Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A(a)(1), 1028A(c)(5), 1028A(b), and 2. A superseding indictment was filed on July 30, 2015. R. 53 (First Superseding Indictment at 1) (Page ID #112). The superseding indictment

added defendants Jared Denzel Alexander and Rumeal McKinney, and further charged Mayberry and others with Aggravated Identity Theft under, inter alia, 18 U.S.C. § 1028A(c)(4). *Id.* at 1, 4 (Page ID #112, 115). Although a second and third superseding indictment were filed, Mayberry pleaded guilty to counts one and three of the first superseding indictment, and count two of the first superseding indictment was dismissed as it pertained to Mayberry at sentencing. R. 318 (Plea Hr'g Tr. at 22–23) (Page ID #1545–46); R. 312 (Sent. Hr'g Tr. at 4–5) (Page ID #1356–57). The original indictment, second superseding indictment, and third superseding indictments were all dismissed as they pertained to Mayberry at sentencing. *Id.* There was no written plea agreement. *Id.*

The Probation Office filed a PSR on August 1, 2016. R. 259 (Initial PSR at 1) (Page ID #875). On August 8, 2016, the district court filed an order "intended as a guide of questions the Court hopes the Probation Officers and counsel will be able to address" at sentencing. R. 272 (Sent. Order at 1) (Page ID #966). The district court was concerned, inter alia, that the government's loss calculations lacked certain important details and that the PSRs for the defendants were inconsistent in whether they applied the sophisticated-means Sentencing Guidelines enhancement under USSG § 2B1.1(b)(10). *Id.* at 2 (Page ID #967). The district court issued a supplemental order further articulating its concerns on August 9, 2016, and the government filed a response to the court's order on August 11, 2016. R. 274 (Suppl. Order at 1) (Page ID #970); R. 276 (Gov. Resp. to Suppl. Order at 1) (Page ID #976). The government explained that the sophisticated-means enhancement applied to Mayberry because of his significant involvement with procuring account numbers and re-encoding cards, and his having

4

received a greater share of the profits. *Id.* at 4 (Page ID #979). The government further explained that its loss calculations were conservative and individualized so as not to attribute defendants with losses inappropriately. *Id.* at 2 (Page ID #977). The government noted, however, that "[g]iven [the defendants'] provable prior and subsequent associations with one another and the uniform nature of their misconduct, the Government could have taken a much harder line on the issue of loss attribution than it has." *Id.* Mayberry agreed with the government that the sophisticated-means enhancement should apply, but argued against the application of another enhancement (that was ultimately not applied and is not the subject of this appeal). R. 306 (Def.'s Reply to Suppl. Order at 2–4) (Page ID #1304-06).

An amended PSR addressing the district court's loss-calculation concerns was issued on August 12, 2016, and sentencing was held on August 25. The district court began the sentencing hearing by noting that it had reviewed the original and amended PSRs, the defendant's sentencing memorandum, its own pre-sentencing orders, and both parties' responses. R. 312 (Sent. Hr'g Tr. at 3) (Page ID #1355). Although the amended PSR did not affect Mayberry's Sentencing Guidelines range, the district court asked Mayberry and his counsel if they had been given sufficient time to review the amended report, and suggested that it would be willing to provide additional time to prepare for sentencing. *Id.* at 4 (Page ID #1356). Mayberry's counsel felt prepared, and said "[w]e are ready to proceed, Your Honor. And I have confirmed with Mr. Mayberry that he feels comfortable with it and is ready to go as well." *Id.*

Count three, the aggravated-identity-theft count, carried a mandatory consecutive sentence of two years of imprisonment, and Mayberry's Sentencing Guidelines range with a total

offense level of fourteen on count one and a criminal history category of II was eighteen to twenty-four months of imprisonment. The Probation Office recommended a total sentence of forty-two months of imprisonment. R. 282 (PSR at 33) (Page ID #1168). The government took issue with the Probation Officer's recommendation because "[i]n the government's view, Mr. Mayberry is the most culpable defendant substantively, even if that's not reflected in the guidelines because of the government's very conservative approach to allocating or assessing financial loss." R. 312 (Sent. Hr'g Tr. at 6–7) (Page ID #1358–59). The government argued that Mayberry "got a lot more than a thousand or $1,500 out of this. And he was not led into this by the others." *Id.* at 7 (Page ID #1359). The government pointed to evidence that even after December 2014, "we have proof that he's being contacted by other codefendants who want to go on trips with him. He is in possession of large amounts of cash. He is online buying account numbers from a website called Joker's Stash." *Id.* at 8 (Page ID #1360). The government then called its lead agent, Special Agent Dave Dobb of the United States Secret Service, to the witness stand. *Id.* at 9 (Page ID #1361).

Agent Dobb testified, inter alia, that: (1) another defendant revealed that Mayberry and Goodwin were always the sources of re-coded credit cards that had illegally obtained credit-card numbers; (2) those cards were used to purchase Meijer gift cards; (3) the Meijer gift cards were used to buy iPads; (4) the iPads would always go to either Mayberry or Goodwin; (5) surveillance video from November 27, 2014 showed Mayberry watching defendants make purchases in the Meijer self-checkout lanes; (6) surveillance video showed Mayberry collecting the receipts from the Meijer purchases; (7) a lawful search of Mayberry's cell phone revealed

text messages to his girlfriend wherein he said that while at Meijer he was doing "[w]hat I always do. Wait on my workers and then come home"; (8) Mayberry texted his girlfriend that he had to "wait on [his] worker to come back with [his] rental"; (9) Mayberry's phone included log-in information for an illicit credit card purchasing website; and (10) Mayberry's log-in information allowed investigators to find eight separate credit-card-number orders for more than 300 credit-card accounts between March 6th and March 11th 2015. *Id.* at 10–13 (Page ID #1362–65). Agent Dobb's testimony also provided some context for the sophistication of this scheme. The Agent noted that on March 11, 2015, Mayberry purchased thirty-seven credit-card numbers, all with Indiana zip codes. *Id.* at 14 (Page ID #1366). Mayberry's text messages from March 11 suggest that he was, in fact, in Indiana, another state with Meijer stores, on March 11. By using credit-card numbers from the target store's state, Mayberry was less likely to trigger a bank's fraud-detection system.

Agent Dobb also testified that several videos were obtained from Mayberry's cell phone that depicted Mayberry holding a high volume of cash, a significant amount of jewelry, and a thick stack of gift cards. *Id.* at 14–15 (Page ID #1366–67). Dobb conceded when asked during cross-examination that some of the text messages and videos he discussed on direct examination were from 2015, which was after the dates of the offense as stated in the indictment. *Id.* at 16 (Page ID #1368).

Mayberry's counsel argued for a Guidelines sentence and noted that her lack of access to Mayberry's co-defendants' PSRs hindered her ability to compare the propriety of their sentences with one that the district court might impose on Mayberry. R. 312 (Sent. Hr'g Tr. at 28) (Page

7

ID #1380). Mayberry's counsel also noted that prior to Mayberry's arrest on this offense, "he had never been prosecuted for any type of financial crime. He certainly had never been to jail for any period of time." *Id.* at 29 (Page ID #1381). Finally, counsel for Mayberry noted that "I have been hearing all along through this case, you know, they think he's a leader, they think he was in charge. I—this—what Agent Dobb just told the Court is all I've ever really heard directly about it . . . I don't know where to put him in the pecking order. You do, Your Honor." *Id.* at 30 (Page ID #1382). Mayberry spoke apologetically for what he had done, and argued that he did not lead the conspiracy. *Id.* at 31 (Page ID #1383).

The district court then embarked on a long discussion of its thought process, and noted that its overarching goals were avoiding inconsistencies among the co-defendants and sentencing in accordance with the 18 U.S.C. § 3553(a) factors. *Id.* at 32; 43 (Page ID #1384; 1395). In response to the concern from Mayberry's counsel that she could not access the PSRs of the other defendants, the district court noted that "the way the probation office put this report together in its amended form gave everybody, all defendants and their counsel, the basic offense conduct information for everybody so that the loss calculation tables were in and available to everybody in uniform fashion." *Id*. at 32 (Page ID #1384). The district court then turned its attention to the loss calculation, which it found "overall conservative for the defense." *Id.* at 33 (Page ID #1385). Seemingly surprised that "the parties didn't really focus on [loss calculation] in their oral argument today," the district court reminded counsel that loss calculation was "the focus of my questions and it's what the government addressed in its written form and [defense counsel] addressed as well in her reply." *Id*. at 34 (Page ID #1386). Though it ultimately declined to hold

8

Mayberry accountable for the full amount of the conspiracy's loss, the district court noted that "you could make a very strong argument in this case that all of the defendants could be appropriately accountable under the guidelines for the full amount of the loss, which over the two-day period was—in real dollars I think it was about $200,000 in actual money lost, dollars out the door." *Id.*

The district court next discussed "a couple other things that make the loss attribution and measurement for Mr. Mayberry not only conservative but I think somewhat distorted on the low side." *Id.* at 35 (Page ID #1387). The court recounted the testimony of Agent Dobb regarding Mayberry's having a greater understanding of how and why the fraudulent scheme worked, "namely, getting cards that were business cards tied to whatever location he was in, whether Michigan or Indiana" and purchasing those cards from "a site that sold cards." *Id.* The district court further noted that Mayberry understood "that getting a Meijer card, a proprietary gift card, was a better investment from a fraud point of view than trying to go with the generics and then washing everything through the electronics with a valid although fraudulently obtained card." *Id.* at 36 (Page ID #1388). The court also relied on the fact that Mayberry was seen watching other defendants swipe the fraudulently obtained cards and that he described his actions as waiting for his workers. *Id.* The district court was particularly troubled that the government attributed to Mayberry losses only on the day where he could be clearly seen on the security footage. "Mayberry, even though he may have been more sophisticated in his understanding than anyone else, more involved in that sense in the operational success, nonetheless comes out with a lower loss number because he's not on camera as much." *Id.*

The district court concluded that the Sentencing Guidelines did not fully account for Mayberry's culpability, and stated on the record that an upward departure of two levels pursuant to Application Note 20 to USSG § 2B1.1, which would result in a Guidelines range of 24 to 30 months of imprisonment on count one (and an overall Guidelines range of 48 to 54 months of imprisonment), was appropriate. *Id.* at 38 (Page ID #1390). The district court concluded that the resulting sentence of 54 months of imprisonment "captures fairly under 3553, and, frankly, even within the guideline framework given the departure, where I see Mr. Mayberry relative to the other people in this fraud." *Id.* at 38–39 (Page ID #1390–91). Before turning to the parties for comment, the district court summarized that "it is the Court's intended sentence on the custodial front 54 months with 30 of that being on Count 1 and with 24 months consecutive on Count 3." *Id.* at 40 (Page ID #1392). The government briefly pressed the district court on whether its intended sentence was a departure or a variance, and the court said that it was departing and balancing the § 3553(a) factors. *Id.* at 42–43 (Page ID #1394–95). The Statement of Reasons confirms that the district court departed upward pursuant to Application Note 20 of USSG § 2B1.1. R. 309 (Statement of Reasons at 2) (Page ID #1315).

In perhaps a moment of prescience, the government remarked that it raised the question of whether the sentence was a departure or a variance because of our previous cases regarding Federal Rule of Civil Procedure 32(h). *Id.* at 43 (Page ID #1395). In response to the Rule 32(h) question, the district court said "in my view when I put out the order earlier that addressed, among other things, the measurement of loss, everybody was fairly on notice that loss was an issue in the case." *Id*. at 43–44 (Page ID #1395–96). The court next turned to defense counsel

and asked "[o]bjections from the defense?" *Id.* at 44 (Page ID #1396). Defense counsel said "No, thank you." *Id.* The district court proceeded to sentence Mayberry to fifty-four months of imprisonment and a term of three years of supervised release. *Id.*; R. 308 (Judgment at 2–3) (Page ID #1309–10). This timely appeal followed. R. 311 (Notice of Appeal at 1) (Page ID #1352).

## II. ANALYSIS

### A. Standard of Review

Mayberry argues on appeal that he received inadequate notice of the district court's intention to depart from the Sentencing Guidelines. Appellant Br. at 31. "Because [Mayberry] failed to object to the adequacy of the district court's notice at his sentencing hearing, his claim may be reviewed only for plain error pursuant to Rule 52(b) of the Federal Rules of Criminal Procedure." *United States v. Meeker*, 411 F.3d 736, 744 (6th Cir. 2005) (citing *United States v. Leachman*, 309 F.3d 377, 380 (6th Cir. 2002)). We will vacate a sentence for plain error if we "find (1) an error that (2) is plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Alexander*, 517 F.3d 887, 889 (6th Cir. 2008) (citing *United States v. Olano*, 507 U.S. 725, 732–34, 736 (1993)). "An effect on substantial rights is typically established through a showing of an actual effect on the outcome of the case." *United States v. Lopez-Medina*, 461 F.3d 724, 745 (6th Cir. 2006) (citing *United States v. Jones*, 108 F.3d 668, 672 (6th Cir. 1997) (en banc)).

Mayberry also argues that the district court's factual finding that Mayberry was the most culpable defendant was clearly erroneous. "In reviewing a district court's application of the

Sentencing Guidelines, this court must 'accept the findings of fact of the district court unless they are clearly erroneous and . . . give due deference to the district court's application of the guidelines to the facts.'" *United States v. Simmerman*, 850 F.3d 829, 832 (6th Cir. 2017) (citing 18 U.S.C. § 3742(e)). We have "held that our standard of review of a district court's application of provisions of the Sentencing Guidelines to the facts should be treated deferentially and should not be disturbed unless clearly erroneous." *Id.*

**B. Mayberry Was Given Reasonable Notice In Accordance With Federal Rule of Criminal Procedure 32(h) That The District Court Was Contemplating A Departure.**

Mayberry first argues that the district court committed plain error because it did not provide the required notice under Rule 32(h) that it intended to depart upward on the basis of loss calculation. Appellant Br. at 31. Specifically, Mayberry argues that he was "prejudiced by the lack of notice because he was surprised by the departure and both unable and unprepared to adequately counter it." Appellant Br. at 32. Mayberry notes that neither the Probation Office nor the government ever suggested that a departure was appropriate.

The government responds that Mayberry received reasonable notice of a potential departure based on his level of culpability because: (1) he knew from the beginning of this prosecution that he was viewed as the lead defendant; (2) the district court's pre-sentencing orders put the parties on notice that it was concerned about the loss calculations and relative culpability of the defendants; (3) the government's response to the court's order indicated that it considered Mayberry the most culpable defendant; (4) the facts used by the district court to depart upward were contained within the PSR that both parties had reviewed; and (5) the

12

government argued at sentencing that a sentence greater than that received by any other defendant was appropriate in this case. Appellee Br. at 23–25.

We conclude that Mayberry's Rule 32(h) claim fails because the notice he received was reasonable. Rule 32(h) of the Federal Rules of Criminal Procedure requires that:

> Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

Fed. R. Crim. P. 32(h). We have previously held that Rule 32 serves to protect a criminal defendant's due-process rights and that "[a] sentencing court that fails to provide reasonable notice of its intention to depart from the Guidelines range therefore commits plain error." *Meeker*, 411 F.3d at 744. As we have previously explained, the notice that Rule 32(h) requires need not be perfect—it must be *reasonable*. There can be no bright-line rule for what constitutes reasonable notice because the analysis under Rule 32(h) "is a context-specific question." *Meeker,* 411 F.3d at 744. "If the issues are particularly complicated or the ground for upward departure is one that was not reasonably contemplated by the defendant, then more time is necessary." *Id.* (citing *United States v. Hayes*, 171 F.3d 389, 391–95 (6th Cir. 1999)). But, "if cumulative evidence otherwise exists in the record, then the defendant is already on notice and less preparation time is necessary." *Id.* (citing *United States v. Patrick*, 988 F.2d 641, 647 n.7 (6th Cir. 1993)). We have even suggested that a district court could satisfy the Rule 32(h) notice requirement without providing any pre-hearing notice of an intended departure. *See id.* (suggesting that the Supreme Court "did not even go so far as to require notice in advance of the

sentencing hearing, but rather left open the possibility that the notice requirement might be met simply by notice at the hearing.").

Mayberry first received notice of the district court's concern over the loss attributed to him and to his codefendants when the court issued its pre-sentencing order on August 8, 2016, a full seventeen days before the August 25 sentencing hearing. In its order, the district court specifically said that it wanted "development of a more complete understanding of the loss tables applicable to each defendant, and to address other potential inconsistencies in the treatment of similar issues across co-defendants." R. 272 (Pre-sentence Order at 1) (Page ID #966). The district court further clarified that the order "is intended as a guide of questions the Court hopes the Probation Officers and counsel will be able to address at the re-scheduled sentencing hearings." *Id.* We conclude that the district court's order provided Mayberry with sufficient notice that the calculation of losses attributable to him could be pivotal in the court's imposition of sentence, including with respect to a possible departure. We further conclude that the district court's careful recitation of the reasons that it intended to depart from the Sentencing Guidelines provided additional notice. Defense counsel was specifically asked whether there were any objections to the court's intention to depart from the Guidelines *before* the court imposed sentence. Counsel did not object, nor did counsel indicate at any point that counsel was surprised or otherwise unprepared to respond to the court's intention to depart. Because the issue of loss calculation in this case is not complicated and because it could have been reasonably contemplated by Mayberry as of the district court's August 8 order, we hold that the seventeen days of notice was reasonable.

Even if the notice provided by the district court was not reasonable, Mayberry's Rule 32(h) claim must fail because he has not shown that he suffered prejudice. Mayberry argues, citing our decision in *United States v. Coppenger*, 775 F.3d 799 (6th Cir. 2015), that he was prejudiced by not having access to the PSRs of his codefendants. In *Coppenger*, we vacated a twenty-three-month sentence based on an upward variance because the district court relied almost exclusively on specific detailed information contained in Coppenger's codefendants' PSRs. *Coppenger*, 775 F.3d at 805. We concluded that "relying on specific detailed information not disclosed to the defendant[ ] is fundamentally at odds with the adversarial scheme established in Rule 32, which implicitly recognizes 'the right to review other information relied on by a court at sentencing.'" *Id.* (quoting *United States v. Hamad*, 495 F.3d 241, 245 (6th Cir. 2007)). Mayberry's case is readily distinguished from *Coppenger* because the district court in sentencing Mayberry relied primarily on the testimony of Agent Dobb and the factual information contained in Mayberry's PSR. Mayberry's counsel was present for Agent Dobb's testimony, and she was permitted to conduct cross-examination. Mayberry and his counsel also stated on the record at sentencing that they had been given sufficient time to review the amended PSR and that they were prepared to go forward with sentencing.

The district court said that its focus in reviewing the PSRs was the offense conduct, and that "the way the probation office put this report together in its amended form gave everybody, all defendants and their counsel, the basic offense conduct information for everybody so that the loss calculation tables were in and available to everybody in uniform fashion." R. 312 (Sent. Hr'g Tr. at 32) (Page ID #1384). Unlike the defendant in *Coppenger*, who was sentenced based

15

on specific and detailed information that was concealed from both the defendant and his counsel, Mayberry was sentenced based on the live testimony of an agent, his own admissions at the plea hearing, the facts contained within the PSR, and the loss-calculation tables that were shared with all of the defendants.

Mayberry also cites *Irizarry v. United States*, 553 U.S. 708 (2008), for the proposition that failing to provide a party "an adequate opportunity to confront and debate the relevant issues" can cause prejudice. Appellant Br. at 33. But Mayberry did have an adequate opportunity to confront and debate the relevant issues. We further conclude that had Mayberry been given additional time to prepare a response to the departure, his arguments would have been the same as the arguments he made in his response to the district court's pre-sentencing order, in his sentencing memorandum, and at sentencing.

Mayberry now argues that if given more time, he could have requested copies of his co-defendant's sentencing transcripts to, inter alia, "learn more about those defendants . . . and the angle they took with the district judge at sentencing." Appellant Br. at 36. We are not moved by Mayberry's plea. Mayberry concedes that the district court prior to sentencing was concerned with the relative culpability of the defendants, and Mayberry's counsel was free to attend the sentencing hearings of his co-defendants to learn more about the court's approach to sentencing in this case. In any event, Mayberry argued at sentencing that he was not more culpable than the other defendants, that he was not a leader of the conspiracy, and that he should not be attributed a loss greater than what was attributed to him in the PSR. We do not believe that Mayberry was precluded from making any arguments that he might have made if the notice in this case had

been different. We conclude that Mayberry has failed to demonstrate prejudice, and that he has therefore failed to demonstrate plain error. Accordingly, under all the circumstances, the district court's decision to depart upward was consistent with the Rule 32(h) notice requirement.

## C. The District Court Was Not Clearly Erroneous In Finding That Mayberry Was The Most Culpable Defendant.

Mayberry next argues that the district court's factual finding that Mayberry was the most culpable defendant was clearly erroneous because the district court considered pre- and post-offense conduct and made certain inferences regarding Mayberry's text messages and involvement with the conspiracy. The government responds that the district court relied on undisputed facts from the PSR and the testimony of Agent Dobb to determine that Application Note 20 of USSG § 2B1.1 could be applied to justify a departure.

A district court's application of the facts to the Sentencing Guidelines is treated deferentially and is not disturbed unless clearly erroneous. *Simmerman*, 850 F.3d at 832. Our review of a defendant's sentence is for reasonableness, both procedural and substantive. *Gall v. United States*, 552 U.S. 38, 51 (2007). We review for abuse of discretion whether a sentence is reasonable. *Id.* A sentence is procedurally unreasonable if a district court commits a "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* A sentence is substantively reasonable if it is "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to

17

comply with the purposes of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (internal quotation marks omitted).

Application Note 20 of USSG § 2B1.1 applies in cases where "the offense level determined under this guideline substantially understates the seriousness of the offense" and includes only a "non-exhaustive list of factors that the court may consider in determining whether an upward departure is warranted." U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 cmt. n.20 (U.S. SENTENCING COMM'N 2015). We conclude that the district court's application of the Note was proper in light of its determination that Mayberry's offense level as calculated under the Guidelines substantially understated the seriousness of the offense. As we discussed *supra*, the district court's thorough recitation of the facts from both the agent's testimony and the PSR supported the district court's factual finding that Mayberry displayed a significant understanding of the sophistication of the conspiracy, that he directed the activities of other codefendants, that he was the source of the re-coded credit cards, that he collected receipts from the co-defendants, that he called the co-defendants his "workers," and that he shared in a greater percentage of the profits of the conspiracy. Although some of the conduct the district court considered in sentencing Mayberry occurred before and after the dates of the conspiracy, a district court may properly consider both pre- and post-offense conduct as part of its application of the § 3553(a) factors. *See United States v. Gleason*, 277 F. App'x 536, 544 (6th Cir. 2008). Given our deferential standard of review of a district court's factual findings as it relates to the Guidelines at sentencing, we conclude that the district court's conclusion that Mayberry was the

most culpable defendant in the conspiracy was not clearly erroneous. Mayberry's sentence was therefore both procedurally and substantively reasonable.

Finally, we note that the district court explicitly stated that it was considering its responsibility under 18 U.S.C. § 3553(a) when deciding that Mayberry deserved a sentence above the recommended forty-two months of imprisonment. R. 312 (Sent. Hr'g Tr. at 43) (Page ID #1395). Even if the district court committed error in departing under Application Note 20 of USSG § 2B1.1, which we conclude it did not, its error would have been harmless in light of its alternative rationale for the sentence under § 3553(a). *United States v. Erpenbeck*, 532 F.3d 423, 441 (6th Cir. 2008).

### III.  CONCLUSION

Mayberry and his codefendants engaged in a serious identity-theft scheme that caused financial harm to hundreds of individuals and numerous institutions. His sentence is significant, and we believe that it is reasonable given the seriousness of this offense. The district court's pre-sentence orders provided reasonable notice that loss calculation would be an issue at sentencing, and the district court's thorough and detailed recitation of its factual findings and sentencing rationale support its conclusion that Mayberry was the most culpable defendant. Therefore, for the reasons stated above, we **AFFIRM** Mayberry's sentence.