NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0305n.06

Case No. 22-3320

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff - Appellee, | ) | Jul 06, 2023 |
|  | ) | DEBORAH S. HUNT, Clerk |
| v. | ) |  |
|  | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR THE |
| RASHAWN MOTEN, | ) | NORTHERN DISTRICT OF OHIO |
| Defendant - Appellant. | ) |  |
|  | ) | OPINION |
|  | ) |  |

Before: MOORE, GIBBONS, and BUSH, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Rashawn Moten pled guilty to various drug and firearms offenses. At sentencing, the district court varied upward from the advisory Guidelines range relying, in part, on Moten's role in getting his intellectually disabled eighteen-year-old co-defendant involved in the drug trafficking conspiracy. On appeal, Moten argues that his sentence was procedurally unreasonable because he was not aware of the grounds upon which the district court would rely. Because Moten's argument is belied by the record, we affirm.

I.

Rashawn Moten, Dwain McGhee, and Da'von Marvell Bascomb engaged in a drug trafficking conspiracy, which included distribution of heroin, fluorofentanyl, fentanyl, methamphetamine, and cocaine. The trio were caught after engaging in multiple drug sales to undercover officers.

Moten pled guilty to one count of conspiracy to distribute controlled substances, five counts of distribution of controlled substances, two counts of possession with intent to distribute controlled substances, and one count of possession of a firearm as a felon. In his plea agreement, Moten acknowledged that the district court retained the right to depart from the advisory Guidelines range, but Moten reserved the right to appeal any sentence in excess of that range. The Presentence Investigation Report ("PSR") placed Moten in Criminal History Category IV and calculated an offense level of 19, resulting in an advisory Guidelines range of 46 to 57 months.

Moten's sentencing occurred across three separate hearings. During the first hearing on January 25, 2022, the court inquired about the dynamic among Moten, McGhee, and Bascomb. Counsel for the government explained that Moten was "essentially the most culpable of all the defendants," with McGhee only present at two of the drug sales and Bascomb "involved . . . for a small number, if not just one single event." DE 96, Sentencing Tr., Page ID 588. The court then questioned how Bascomb became involved in the conspiracy, as he was eighteen years old and in high school at the time the crimes were committed, while Moten was thirty-four years old. Neither party could provide an answer for how Bascomb became involved. The court explained that it would be unsealing portions of Bascomb's PSR related to his "personal challenges regarding his own mental faculties and/or limitations." *Id.* at Page ID 591. The court further notified Moten that it was considering an upward variance because the Guidelines did not account for "someone who may be the leader or organizer of the [criminal] activity taking advantage purportedly of a young man at this tender age" and with "at least some educational difficulties." *Id.* Another sentencing hearing was scheduled so that Moten's counsel could review Bascomb's partially unsealed PSR and determine if counsel wanted to make any response or objection. The court

further invited Moten's counsel to attend a hearing for Bascomb so that he could observe Bascomb in person.

The next sentencing hearing occurred on March 8, 2022. The parties and the court agreed with the PSR that the Guidelines range was 46 to 57 months. The court then notified Moten that it was "contemplat[ing] an upward variance for two reasons." DE 93, Sentencing Tr. Mar. 8, Page ID 487. The first reason was Moten's possession and distribution of fentanyl, a particularly deadly drug in the county where Moten had been selling. The court provided Moten's counsel with news articles to support these contentions. The second reason was Moten's role in bringing Bascomb, a particularly vulnerable individual because of his age, limited education, and intellectual disabilities, into the drug operation. After a lengthy discussion about whether an upward variance was proper, the court continued the sentencing once again in order to give Moten's counsel sufficient time to respond to the fentanyl statistics provided by the court. Although Moten's counsel protested multiple times that he did not need a continuance and that sentencing could occur that day, the court insisted on a continuance so that there was no chance that Moten had "been surprised unfairly." *Id.* at Page ID 508-09.

Moten's final sentencing hearing occurred on April 4, 2022. The court weighed the 18 U.S.C. § 3553 factors and determined that an upward variance was necessary because of the involvement of fentanyl and Bascomb's role in the drug operation. The court then sentenced Moten to 63 months' imprisonment—a six-month upward variance from the Guidelines range— to be followed by five years of supervised release. Moten objected to the upward variance and timely appealed his sentence.

II.

On appeal, Moten challenges his sentence as procedurally unreasonable. Sentencing challenges are reviewed for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). Examples of procedural error include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Adkins*, 729 F.3d 559, 563 (6th Cir. 2013) (alteration in original) (quoting *Gall*, 552 U.S. at 51). Procedural error can also occur when the sentencing court varies upward based on unforeseeable or surprising factors and fails to give the defendant a reasonable opportunity to respond. *United States v. Coppenger*, 775 F.3d 799, 803-04 (6th Cir. 2015).

III.

"There is a 'long' and 'durable' tradition that sentencing judges 'enjo[y] discretion in the sort of information they may consider' at an initial sentencing proceeding." *Concepcion v. United States*, 142 S. Ct. 2389, 2398 (2022) (alteration in original) (quoting *Dean v. United States*, 581 U.S. 62, 66 (2017)). In reaching sentencing determinations, federal judges "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446 (1972). Despite this broad discretion, a sentencing court must give the defendant notice of any information it plans to rely upon in sentencing (that is not already contained in the PSR), and "give [the defendant] a reasonable opportunity to comment on that information." Fed. R. Crim. P. 32(i)(1)(B); *Coppenger*, 775 F.3d at 803-04. A defendant must receive "reasonable notice" of the reasons for the variance, but "what constitutes reasonable notice will vary depending on the

circumstances of the particular case." *United States v. Zabel*, 35 F.4th 493, 506 (6th Cir. 2022) (quoting *United States v. Erpenbeck*, 532 F.3d 423, 443 (6th Cir. 2008)).

The court notified Moten at the first two sentencing hearings that it planned to vary upward because of the involvement of his much younger co-defendant, who was still in high school and had possible developmental challenges. On appeal, however, Moten seizes on a brief comment by the court: "It's obvious for anyone who has talked to Mr. Bascomb, and I have done so at his sentencing hearing, that he has limitations. . . . It is not a secret, if you spend any time with him or talk with him, that he has limitations, educational, and perhaps otherwise." DE 94, Sentencing Tr., Page ID 552. From that statement, Moten argues that he did not and could not have anticipated that the court would rely upon personal observations of Bascomb in imposing the upward variance, thus making it procedurally unreasonable for the court to rely on those observations.

Moten's claim fails because he was constructively notified of the reasons for the upward variance, including that personal observations might factor into the analysis, and given ample time to respond. First, the contents of Bascomb's PSR—upon which Moten knew the court might rely—contain similar personal observations of Bascomb. As discussed by the government at Moten's final sentencing, Bascomb's PSR noted that he "had delayed speech and difficulty with reading and writing"—details that likely would have been personally observable by the court. DE 94, Sentencing Tr., Page ID 536. And at the first sentencing hearing, the court stated that it was holding hearings concerning Bascomb's bond and would later conduct Bascomb's sentencing. Therefore, Moten was on notice that Bascomb's intellectual challenges were obvious and observable, and that the court would itself be interacting with Bascomb in court proceedings.

Further, the actions of Moten's counsel reflect his understanding that information could be gleaned from observing Bascomb personally that was not contained in the PSR. At the first

hearing, Moten's counsel inquired about attending one of Bascomb's hearings "to get a better understanding of what . . . his conduct was, what his background is, some other information that would be helpful . . . down the road when we have the [second sentencing] hearing." DE 96, Sentencing Tr., Page ID 600. Even though the court reminded counsel that much of that information would be available in Bascomb's PSR, counsel insisted that he would still like to attend.[1] Therefore, Moten's counsel appeared to be aware of the value of observing Bascomb personally and actually received this opportunity.

Finally, it is unclear what, if anything, Moten would have done differently had he known this information. Moten claims that he might have called "expert or lay witnesses [to testify] regarding the obviousness of [Bascomb's] limitations" because "not everyone who suffers limitations or disabilities presents as such." CA6 R. 43, Reply Br., at 3. But this contention is not persuasive. The court's extensive discussion of Bascomb's intellectual challenges, as well as their mention in Bascomb's PSR, could have alerted Moten to the potential benefits of expert testimony.

The district court's foreseeable commentary regarding its reasoning does not make Moten's sentence procedurally unreasonable. Moten was aware that the court was considering an upward variance based in part on the youth and intellectual difficulties of his co-defendant. The court's passing comment about personal observations of Bascomb was not unforeseeable or reasonably surprising to Moten. Bascomb's PSR mentioned issues with reading, writing, and delayed speech. Moten knew the court would be observing and interacting with Bascomb personally. And Moten's counsel requested and received the opportunity to observe Bascomb in the same setting as the

---

[1] The court agreed and allowed Moten's counsel to attend the hearing, although the record does not indicate whether counsel did in fact attend.

court.  Moten's sentencing does not rise to the levels of surprise and unforeseeability that constitute procedural unreasonableness or abuse of discretion.

IV.

For the foregoing reasons, Moten's sentence is affirmed.