NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0530n.06

No. 11-1324

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*May 22, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| ANDRE JONES, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: BOGGS, SUHRHEINRICH, and COOK, Circuit Judges.

**Suhrheinrich, Circuit Judge.** In this criminal appeal Defendant Andre Jones ("Defendant") challenges his sentence, arguing that the district court erred in applying a four-level enhancement for possession of a firearm in connection with another felony under U.S.S.G. § 2K2.1(b)(6). We AFFIRM.

## I. Background

On July 17, 2010, two women flagged down a Detroit Police patrol vehicle and informed the officers that a man was shooting an "AK-47" in the Sojourner Truth Homes, a housing project in Detroit. As the officers approached the housing complex, they heard several shots. The officers parked their vehicle and approached on foot.

The parties disagree as to what happened next. In its sentencing memorandum, consistent with the Police Investigator's Report, the United States represented that as the officers approached

1

18081 Fenelon Drive, Defendant appeared at the front door holding an AK-47 assault rifle and walked out of the house onto the front porch. Defendant shouted at the other residents and waived the AK-47 in the air. One of the officers immediately ordered Defendant to drop his weapon and step away from the house, but Defendant ignored the order and went back inside, shutting and locking the door behind him. The police reported to dispatch that they had "a barricaded gunman." The police learned that the owner of the house, Michelle Harris, was inside, along with several children.

Defendant remained downstairs alone while the police told him to come out with the weapon. According to both the Police Investigator and Harris, after roughly twenty minutes, one of the officers convinced Defendant to exit the house unarmed. Defendant was immediately arrested. Inside the house, the officers recovered Defendant's loaded AK-47, underneath a bed, as well as a .22-caliber rifle that belonged to him, in the lower hallway closet. Thus, according to the United States, Defendant disobeyed the police by retreating into the home with a loaded firearm.

Defendant, on the other hand, claimed that he was already inside the home when the police arrived. In support, he relied on statements made by Harris to police the day after the incident. Harris told police that after Defendant finished firing, he walked back into the house and slammed the door shut. Harris stated that the officers did not arrive until five minutes after the shots. Thus, Defendant claimed that, because he was already inside the home, his only act of resistance was a brief two- to five- minute delay in exiting the home at the officers' orders.

Defendant pleaded guilty to one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).[1] This gave Defendant a base offense level of 20. The presentence report

---

[1] There was no Rule 11 plea agreement.

recommended a four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6), for use of a firearm in connection with the commission of another felony offense, namely using an AK-47 to resist arrest. The presentence report found that Defendant had violated Mich. Comp. Laws Ann. § 750.81d(1), which makes it a felony to assault, batter, wound, resist, obstruct, or endanger a police officer. The presentence report also recommended a three-point reduction for acceptance of responsibility. This resulted in a total offense level of 21. Defendant's criminal history category was IV. Without the section 2K2.1(b)(6) enhancement, the sentencing guidelines range would have been 37 to 46 months. With the enhancement, the recommended sentencing guidelines range was 57 to 71 months.

Defendant objected to the section 2K2.1(b)(6) enhancement on the ground that he "did not resist and obstruct the police department," relying on Harris's statement that he had re-entered the home before the police arrived. The United States countered that the factual dispute was irrelevant because even if Defendant's version of events were credited, the fact that he barricaded himself was also "resisting, obstructing, and impeding." R. 23 at 5. Defendant responded that "[t]he most you can say is it took him a couple of minutes, two to five minutes to come out of the house, and I don't see that as resisting or obstructing." R. 23 at 6.

The district court determined that:

It's a long two to five minutes when you see someone, they have a high-power weapon and they're behind the door, it's a pretty long time for police officers to be standing there and to–I just don't buy your argument. He came out. He had the weapon, the police gave him a direction. He didn't follow the direction. And more importantly, did he not follow the direction he went inside and whether he locked the door, didn't lock the door, I don't think is the issue, the issue is he restricted them from doing their duty. Even if it took ten seconds, somebody could get hurt and potentially the police officers. So I think that your objection to– the report as written

3

by Probation is correct and your objections are noted, but I don't think they apply in this case.

R. 23 at 6-7. The court found that "the situation here was very, very extreme," R. 23 at 13, and sentenced Defendant to 71 months in prison at the highest end of the guidelines range.

Defendant appeals.

## II. Analysis

We review the application of a section 2K2.1(b)(6) enhancement under a specific standard. *See United States v. Taylor*, 648 F.3d 417, 431-32 (6th Cir. 2011). Factual findings are reviewed for clear error, and due deference is given to the district court's determination that the firearm was used or possessed in connection with another felony. *Id.* To the extent a challenge to the application of the section 2K2.1(b)(6) enhancement presents strictly a question of law, de novo review applies. *Id.* at 431.

The advisory guidelines provide for a four-level enhancement to the defendant's base offense level "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6) (2009). To apply the section 2K2.1(b)(6) enhancement, the district court must find that the government has established by a preponderance of the evidence that the defendant (1) committed another felony, and (2) used or possessed a firearm in connection with that offense. *United States v. Mojica*, 429 F. App'x 592, 594 (6th Cir. 2011).

According to the application notes, the "in connection with" element of U.S.S.G. § 2K2.1(b)(6) requires that the firearm "facilitated, or had the potential of facilitating, another felony offense." *Id.* cmt. n.14(A). "Another felony offense" is defined as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by

4

imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.* § 2K2.1(b)(6) cmt. n.14(C).

This court has held that section 2K2.1(b)(6) requires the government to establish, by a preponderance of the evidence, a nexus between the firearm and an independent felony. *United States v. Burns*, 498 F.3d 578, 580 (6th Cir. 2007) (internal citations omitted). In other words, the government must prove that "the connection between the firearm and the other felony was not merely coincidental, that the firearm served some purpose in relation to the other offense, such as embolden[ing] the defendant in committing it." *United States v. Berkey*, 406 F. App'x 938, 939 (6th Cir. 2011) (internal quotation marks and citations omitted). *See also United States v. Coleman*, 627 F.3d 205, 212 (6th Cir. 2010) (holding that a firearm or ammunition facilitates the commission of a felony if it makes it "easier or less difficult," or if it serves "some emboldening role in a defendant's felonious conduct" (internal quotation marks, alteration, and citation omitted)), *cert. denied*, 131 S. Ct. 2473 (2011). The firearm "need not be actively used" in the other offense. *United States v. Angel*, 576 F.3d 318, 320 (6th Cir. 2009) (internal quotation marks and citation omitted). This court has also recognized that "demonstrating this nexus is not a particularly onerous burden." *United States v. Davis*, 372 F. App'x 628, 629 (6th Cir. 2010).

Here, the "other felony" is resisting arrest under Michigan law, which states that "an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony." Mich. Comp. Laws § 750.81d(1). The act of obstructing an officer from performing his or her duties "includes the use or threatened use of physical interference or force *or a knowing failure to comply with a lawful command.*" *Id.* § 750.81d(7)(a) (emphasis added). *See also United States v. Mosley*,

575 F.3d 603, 607 (6th Cir. 2009) (holding that Mich. Comp. Laws § 750.81(d)(1) contains "at least two categories" of violations, including violations "involving an individual who 'obstructs' an officer through 'a knowing failure to comply with a lawful command'").

Defendant argues on appeal that:

> Without making clear whether it believed that Mr. Jones had actively resisted arrest by fleeing the police while armed as the Government maintained, or merely passively resisted arrest by hesitating to exit the Fenelon house as the defense argued, the district court determined that Mr. Jones's possession of a firearm facilitated the offense of resisting arrest. Because it appears to have been based on the legal conclusion that the form of resistance was immaterial–*i.e.*, that the firearm facilitated even the passive resistance in the form of Mr. Jones delaying his exit from the house–the district court's finding was in error.

Appellant's Br. at 11. He asserts that "[e]ven assuming that Mr. Jones's passive failure to exit the Fenelon house immediately constituted a violation of M.C.L. § 750.81(d)(1)–a premise he disputed below but will not reargue for purposes of this appeal–that particular crime was not furthered by the presence of a firearm." *Id.* at 9. He asks this court to remand for resentencing, "making clear that Mr. Jones's possession of a firearm was merely coincidental to his brief delay in following police orders to exit a home and did not 'further' that conduct." *Id.*

No matter how he paints the district court's ruling, Defendant's variegated argument fails.[2] First of all, contrary to Defendant's assertion, the district court actually found as a matter of fact that Defendant was outside when the police order was issued: "He came out. He had the weapon, the police gave him a direction. He didn't follow the direction. And more importantly, did he not follow

---

[2]In the district court Defendants focused on the "other felony" aspect of section 2K2.1(b)(6). There Defendant alleged that he was inside the house when the police issued their order and that he responded within two to five minutes. He contended that he did not resist and obstruct the police department in violation of Mich. Comp. Laws § 750.81d(1). On appeal, his argument is focused on the "in connection with" element of the guideline. The government takes no issue with Defendant's altered argument on appeal, so we decide the matter using a de novo standard of review.

6

the direction he went inside." R. 23 at 6-7. Later, in exercising its authority to apply the advisory guideline, the court specifically found that "he didn't respond to the police officers' lawful request, that he went back into the house which again created a horrible situation for both the police officers." *Id.* at 13.

Second, the district court found that even at "two to five minutes" Defendant "knowingly fail[ed] to comply with a lawful command," Mich. Comp. Laws § 750.81d(7)(a), which is what the "other felony" statute at issue in this case requires. In other words, the district court was not obliged to characterize Defendant's resistance as either "active" or "passive." *See also Angel*, 576 F.3d at 320 (stating that the firearm "need not be actively used" in the other felony offense for purposes of a section 2K2.1(b)(6) enhancement (internal quotation marks and citation omitted)).

Third, the record supports the conclusion that the firearm "facilitated, or had the potential of facilitating" the other felony. Defendant never disputed he had easy access to the weapon and the district court clearly found that even with a brief delay the police officers could potentially get hurt. *Cf. id*. at 321-22 (noting that the defendant's objection did not specifically address the finding that the firearms were possessed "in connection with" another felony, but that under either a preserved or unpreserved error standard, the district court did not err in applying the section 2K2.1(b)(6) standard). Defendant had a loaded AK-47 with him in a locked house. The residents of the home (as well as his own children) were hiding from him upstairs. Whether he received an order to drop the weapon before he retreated into the house or merely heard the police order him to immediately exit the house, as the district court found, Defendant admittedly "neglected to exit a home immediately when police ordered him to do so." Appellant's Br. at 14. As the United States points out, if Defendant had been unarmed, the police could have entered the house and arrested him.

7

However, "because Jones was armed with a high-power assault rifle, the police were constrained to surround the house and attempt to coax Jones to surrender before he used his weapon to injure himself, the police, or the woman and children barricaded inside." Appellee's Br. at 9-10. Therefore, possessing the AK-47 facilitated Jones in resisting arrest by making it easier for him to avoid coming out of the house.

Moreover, the AK-47 "emboldened" Defendant in resisting arrest. As noted, the AK-47 was loaded and operational. Defendant knew the officers knew he had it because they had ordered him to drop it. The gun's presence put the police on notice that he was armed and dangerous. The weapon made it easier for Defendant to "delay" complying with a direct police order. It prevented the officers from storming the house to rescue the women and children and increased the risk of violence by heightening the potential need for the police to use force if Defendant did not ultimately surrender. *Cf. Coleman*, 627 F.3d at 212 (applying the enhancement where "the ammunition emboldened [the defendant] in the knowledge that he was one step closer to having a fully-loaded firearm to protect himself and his illegal drugs, and the ammunition potentially served notice to potential buyers that [the defendant] was a step closer to having a fully-loaded firearm"). Like the district court, we think that two to five minutes is a long time to "hesitate to obey" a police order to drop an AK-47 and submit to arrest.

As this court has explained, U.S.S.G. § 2K2.1(b)(6) "was created in response to a concern about the increased risk of violence when firearms are used or possessed during the commission of another felony." *United States v. Burke*, 345 F.3d 416, 427 (6th Cir. 2003) (internal quotation marks and citation omitted). *See also United States v. Hurst*, 228 F.3d 751, 763 (6th Cir. 2000) (same). We think the district court correctly recognized that this is precisely the kind of situation the

8

enhancement was intended to address. We therefore hold that the court application of U.S.S.G. § 2K2.1(b)(6) to the facts of this case was proper.

### III. Conclusion

The judgment of the district court is **AFFIRMED.**