**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0626n.06

Nos. 17-4066/4049

<table>
<tr><td>UNITED STATES COURT OF APPEALS<br>FOR THE SIXTH CIRCUIT</td><td>**FILED**<br>Dec 18, 2018<br>DEBORAH S. HUNT, Clerk</td></tr>
</table>

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE |
| MICHAEL A. MASSEY | ) NORTHERN DISTRICT OF |
| | ) OHIO |
| Defendant-Appellant. | ) |
| | ) |

BEFORE: GRIFFIN and DONALD, Circuit Judges; BERTELSMAN, District Judge.[*]

PER CURIAM.

Michael A. Massey appeals two separate sentences imposed by the district court after Massey was arrested with nearly 100 grams of marijuana in individual packages and other drug trafficking paraphernalia, pled guilty to being a felon in possession of a firearm, and admitted that this constituted a violation of the terms of his supervised release. For the reasons set forth below, we **AFFIRM** both of Massey's sentences.

I.

Massey pled guilty to armed bank robbery in violation of 18 U.S.C. §§ 2113(a), (d), and on August 24, 2012, he was sentenced by a federal court in Pennsylvania to 60 months'

---

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

imprisonment and three years of supervised release. Shortly after he was released on November 19, 2015, Massey was diagnosed with Bell's Palsy and contracted a respiratory infection.

As Massey explains, at this time he began experiencing intermittent symptoms related to stomach ulcers (which he has suffered with since 2010) and Ulcerative Colitis. This often resulted in stomach pain, nausea, and bleeding in his upper gastrointestinal tract. Massey regularly maintained a weight of 240–250 pounds but, for reasons not explained, sometime in 2016 his weight declined 40 pounds over just sixty days. Massey claims at that time he began smoking marijuana daily as a form of self-medication to ease the pain from his ulcer. However, Massey's 2012 federal presentence report indicates he admitted to smoking marijuana daily for six months before he was arrested for bank robbery.

On May 2, 2016, a Meadville, Pennsylvania police officer witnessed Massey driving a vehicle under a suspended license. The officer initiated a traffic stop, and as he approached Massey's vehicle he smelled the odor of marijuana. Massey refused to comply with the officer's orders to put the car in park. Before the officer could reach the vehicle, Massey hit the gas and fled. Massey soon abandoned the vehicle on another street and fled on foot, leaving the driver's side door open. When the officers later located the vehicle, they discovered several rolling papers and a burnt marijuana blunt laying in the driver's side door.

Aware that he had just violated the terms of his probation and that there would be a warrant for his arrest, Massey decided to leave town for a few days with Tasha Wolford.[1] By May 5, 2016, Massey was in Ohio en route to Indianapolis, smoking marijuana in the passenger's seat while Wolford drove. Then, an Ohio State Trooper stopped Wolford for a traffic violation. As the

---

[1] Massey characterizes his relationship with Wolford as "friends, kinda dating."

Trooper approached the vehicle, he could smell the scent of raw marijuana emanating from it. The Trooper ordered the couple to step out of the car and requested back-up to assist with a probable cause search of the vehicle. When Deputy Scott Mosser arrived, Wolford was in the Trooper's cruiser and Massey was standing near the vehicle, acting "suspicious and nervous." Massey then asked to speak to Wolford and the Trooper obliged. Deputy Moser watched as Massey leaned into the cruiser to whisper something to Wolford. When Massey stepped away from the cruiser, he complained he was having chest pains. Deputy Moser asked Massey if he needed medical assistance, to which Massey responded that he did.

Deputy Moser walked to his cruiser to request an ambulance while the other Trooper was conducting the search of Wolford's vehicle. With both Troopers occupied, Massey decided to make a run for it into a large muddy field. Deputy Moser pursued Massey on foot and ordered him to stop. Massey ran about 200 yards before falling to the ground. When Deputy Moser asked Massey why he ran, Massey replied, "Weed and gun." A search incident to Massey's arrest revealed $300.00 in cash and a single tablet (later determined to be Hydrocodone).

During the search of the vehicle, the Troopers discovered a duffle bag, which Massey readily claimed as his. The duffle bag contained: a Hi-Point 9 mm handgun, six rounds of ammunition loaded in a magazine, a box containing forty-seven rounds of 9 mm ammunition, ten cigars, some cigarette rolling papers, a small digital scale, several empty plastic bags, and approximately 98.3 grams of marijuana.[2] The marijuana was packaged into twenty-one Ziplock-type plastic bags in varying quantities. Specifically: one bag with 3.861 grams; five bags respectively containing 6.760 grams, 6.787 grams, 6.766 grams, 6.732 grams, and 6.767 grams;

---

[2] As Massey correctly points out, the PSR states on one page that the total amount of marijuana found was 91.63 grams. However, elsewhere in the PSR the total amount is stated as 98.3 grams.

thirteen smaller bags with the ends torn and tied containing approximately 1 gram each for a combined total weight of 13.201 grams; one bag with 19.973 grams; and one vacuum sealed bag with 27.597 grams. Massey acknowledged he had "2 ounces maybe 100 grams" of marijuana but claimed Wolford "didn't know I had that much weed."

Further investigation revealed that both the vehicle and the handgun were registered to Wolford. According to Deputy Moser, however, Massey repeatedly claimed ownership of both the marijuana and the handgun and reported that he had stashed the gun in the duffle bag when the Trooper initiated the traffic stop. When law enforcement questioned Massey and Wolford about the circumstances surrounding Massey's arrest, Massey maintained that the marijuana was for personal use and that he had purchased it for $800.00 from an unknown individual in Warren, Ohio. Wolford remarked that she knew Massey had marijuana because "he smoke[d] a lot" and whatever he had on him was for personal use. She further claimed she had not witnessed Massey sell marijuana.

II.

Massey was indicted June 14, 2016, on two counts: (1) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and (2) possession with intent to distribute a controlled substance (marijuana), in violation of 21 U.S.C. §§ 841(a)(1), and (b)(1)(D). On May 30, 2017, Massey pled guilty to Count I, and pursuant to a plea agreement Count II was dismissed. The government agreed to a base sentencing level of 20 but reserved the right to seek a four-level enhancement under U.S.S.G. § 2K2.1(b)(6).

On September 1, 2017, the federal district court in Pennsylvania transferred jurisdiction over Massey's supervised release to the district court below. A Presentence Report was then prepared, recommending that a four-level enhancement, pursuant to § 2K2.1(b)(6), be applied to

Massey's base offense level of 20 because he possessed a firearm or ammunition in connection with the other felony offense of possession with intent to distribute marijuana. The parties in turn each filed sentencing memoranda addressing the § 2K2.1(b)(6) enhancement. The district court then held a sentencing hearing on September 26, 2017. After hearing the parties' arguments regarding the enhancement, the court concluded that the § 2K2.1(b)(6) enhancement was supported by a preponderance of the evidence. The court summarized its understanding of the government's argument, and stated its reasons for applying the enhancement by explaining, in relevant part, that:

> [T]he way the marijuana was packaged, separate amounts almost exactly to the tenth or hundredth or thousandth of a gram, there were multiple packages . . . he had several ounces of marijuana; street value about $800. He said, "It was all for my personal use." There's no, no dispute that Mr. Massey is a regular marijuana user so the government has to prove by a preponderance that at least some—[the government] doesn't have to prove all of it—at least some of the marijuana was possessed by [Massey] for sale, distribution. . . . [A]nd [the government] has said by the quantity of it and then particularly that it was—the numerous packages, many of them were approximately one gram. . . . There were five separate bags, all of them weighed 6.7 grams. And the relatively equal amounts and the manner in which it was packaged are indicative of distribution rather than personal use. And also the fact that [Massey] fled from the police is—and when he was asked why he fled, he said, "Well, weed and a gun." So he knew he was in trouble for marijuana, and he wouldn't have been in real trouble for just marijuana for personal use because everyone knows that's just a misdemeanor.

> ****

> [T]he burden here is not beyond a reasonable doubt; it's by a preponderance. And I find by a preponderance of the evidence that the enhancement applies and it's for the reasons the government said in its response and what I just articulated.

In addressing Massey's arguments that the marijuana was for personal use in connection with his medical condition,[3] the court further noted that:

---

[3] The court heard Massey's argument despite Massey admitting he did not have a prescription or any other evidence from a medical provider to substantiate his claim.

> $800 worth of marijuana is a lot of marijuana. It would take you a long time to use all of that. Yes, you could use all of that over a long period, but it's—I find it's more probable, it's more probable than not that you intended to sell at least some of it . . . just based on the quantity, the dollar amount and the nature of the packaging.

Accordingly, the court applied the four-level enhancement, increasing Massey's offense level to 24. Two levels were then deducted for acceptance of responsibility, and a third level was deducted for a timely guilty plea. Thus, Massey's final offense level was 21, which when combined with his criminal history category of IV, yielded a recommended Guidelines range of 51 to 71 months' imprisonment. The court sentenced Massey in Case No. 1:16-cr-00197 to 57 months' imprisonment, followed by three years of supervised release.

The court then turned its attention to Massey's violation of the terms of his supervised release. After the court advised Massey that a violation of the terms of his release carried a sentence of 8 to 14 months' imprisonment, Massey pled guilty to the charge and requested that whatever sentence the court imposed be set to run concurrently. The court then revoked Massey's supervised release and imposed a sentence of 8 months' imprisonment in Case No. 1:17-cr-00349, ordering that it be served consecutive to the 57-month sentence already imposed. In doing so, the court explained the reason for the consecutive sentence:

> I almost always, virtually always apply at least some of the sentence consecutive to the new offense. Otherwise there's no additional punishment. And the point is the Judge in this case in the Eastern District of Pennsylvania was responsible to the community for you, and you betrayed that trust by committing a new violation. So I'm going to impose an eight-month sentence and run that consecutive.

At that time the court asked the parties if they had "any general or specific objections," and both parties responded that they did not.

Massey filed a timely notice of appeal in both Case No. 1:16-cr-00197 and Case No. 1:17-cr-00349. This consolidated appeal followed.

III.

On appeal, Massey assigns two errors. First, he assigns error to the district court under the Sentencing Guidelines for applying the § 2K2.1(b)(6) four-level enhancement for possession of a firearm in connection with the felony offense of possession with intent to distribute marijuana. Second, he assigns error to the adequacy of the explanation the district court gave in imposing the 8-month sentence for his supervised release violation and setting it to run consecutively to his firearm sentence. We address each in turn.

**A. The District Court Did Not Err In Applying The Four-Level Enhancement.**

We review the sentence imposed by a district court for procedural and substantive reasonableness under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Jackson*, 877 F.3d 231, 236 (6th Cir. 2017). Where the error complained of involves a firearm enhancement under § 2K2.1(b)(6)(B), "we review the district court's factual findings for clear error," giving "due deference to the district court's determination that the firearm was used or possessed in connection with the other felony." *United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011) (internal quotation marks omitted). The district court's legal interpretations of the Guidelines are reviewed de novo. *United States v. Morgan*, 687 F.3d 688, 693 (6th Cir. 2012).

"A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Gort-Didonato*, 109 F.3d 318, 320 (6th Cir. 1997) (citations and internal quotation marks omitted); *United States v. Coppenger*, 775 F.3d 799, 803 (6th Cir. 2015). Consequently, if "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). So long as "the district court interprets the evidence in a manner consistent with the record, we are

required to uphold its decision even if we would have reached the opposite conclusion." *United States v. Darwich*, 337 F.3d 645, 663 (6th Cir. 2003).

Massey contends the four-level enhancement prescribed by U.S.S.G. § 2K2.1(b)(6)(B) is inapplicable to his conduct. In order to apply the four-level sentence enhancement under U.S.S.G. § 2K2.1(b)(6)(B), "the district court must find that the government has established by a preponderance of the evidence that the defendant (1) committed another felony, and (2) used or possessed a firearm in connection with that offense." *United States v. Jones*, 470 F. App'x 477, 480 (6th Cir. 2012). Viewing the facts presented collectively, the evidence establishes the factors necessary for the four-level enhancement, and thus the district court did not clearly err.

Section 2K2.1(b)(6)(B) applies "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense."[4] Underpinning the enhancement is the rationale that "the presence of the firearm has the *potential* of facilitating another felony offense." § 2K2.1 cmt. n.14(B) (emphasis added). For that reason, the enhancement is imposed "if the firearm . . . facilitated, or had the potential of facilitating, another felony offense." § 2K2.1 cmt. n.14(A). In drug trafficking cases, § 2K2.1(b)(6) applies when "a firearm is found in close proximity to drugs, drug manufacturing materials, or drug paraphernalia." § 2K2.1 cmt. n.14(B). However, under either application, the government must demonstrate a sufficient "nexus between the firearm and an independent felony," such that the possession of the firearm is not "merely coincidental." *Taylor*, 648 F.3d at 432 (first quoting *United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009); and then quoting *United States v. Ennenga*, 263 F.3d 499, 503 (6th Cir. 2001)). In other words, there must be "a clear connection between the gun that served as the basis for the conviction

---

[4] The phrase "in connection with," is equivalent to the "in relation to" language of 18 U.S.C. § 924(c)(1). *E.g.*, *United States v. Henry*, 819 F.3d 856, 869 n.5 (6th Cir. 2016); *United States v. Hardin*, 248 F.3d 489, 500 (6th Cir. 2001).

for felon in possession of a firearm and . . . the other offense that triggers the enhancement." *Jackson*, 877 F.3d at 237. It is the government's burden to establish the factors supporting this enhancement by a preponderance of the evidence. *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014).

### i. Possession With Intent to Distribute

The government argues that the other felony offense in this case is possession with intent to distribute a controlled substance—98.3 grams of marijuana.[5] Massey does not seriously dispute the quantity; nor does he deny that he knew the narcotics belonged to him at the time of the seizure. The only issue here is whether the government met its burden of establishing that Massey had the intent to distribute the marijuana, thereby satisfying the factual predicate for Massey's engagement in "another felony offense." A thorough review of the record presented reveals that the government satisfied its burden.

Proof of intent to distribute may be inferred from a number of factors, including "the possession of quantities of drugs too large for personal use; the value of the drugs; the presence of drug distribution paraphernalia, including scales and packaging materials; the concurrent seizure of large amounts of currency; and the purity of the drugs." *United States v. Montgomery*, 491 F. App'x 683, 689 (6th Cir. 2012) (citations and internal quotation marks omitted). No one factor is dispositive; rather, the controlling principle is that the evidence is viewed collectively. *See Gort-*

---

[5] For purposes of the enhancement, "[a]nother felony offense," means "any federal, state, or local offense," other than the underlying firearm offense, "punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1(b)(6)(B) cmt. n.14(C). As relevant here under 21 U.S.C. §§ 841(a)(1), and (b)(1)(D), the essential elements of proof required are that Massey (1) knowingly, (2) possessed marijuana, (3) with the intent to distribute it. *United States v. Wettstain*, 618 F.3d 577, 585 (6th Cir. 2010).

*Didonato*, 109 F.3d at 320. The factual predicate for a sentencing enhancement must be established by a preponderance of the evidence. *United States v. Bandy*, 239 F.3d 802, 806 (6th Cir. 2001).

Here, the quantity of marijuana that Massey possessed strongly indicates an intent to distribute. Notwithstanding, Massey argues this is insufficient circumstantial evidence. But even where there is no direct evidence of drug trafficking and the quantity involved was much less than that presented in this case, we have upheld the district court's finding at sentencing that the defendant intended to distribute the narcotics in question. *See, e.g.*, *United States v. Frazier*, 426 F. App'x 401, 402 (6th Cir. 2011) (13.8 grams of marijuana and 2.4 grams of crack cocaine); *United States v. Burton*, 440 F. App'x 474, 475 (6th Cir. 2011) (14.5 grams of marijuana divided into ten smaller bags). Indeed, this is because there is no bright-line rule as to what constitutes a "dealer amount." *See McPhearson v. United States*, 675 F.3d 553, 561 (6th Cir. 2012). As the district court correctly noted, "[t]he government [is] not required to establish any specific quantity, or any intent to distribute a specific quantity, in order to establish . . . possession with intent to distribute." *See United States v. Villarce*, 323 F.3d 435, 439 (6th Cir. 2003); *cf.* (R1 48, ID 225–27).

The marijuana in Massey's possession was also divided into small individual packages, each with nearly the same amount, a factor that is indeed characteristic of an intent to distribute. Massey disputes this and relies heavily on *United States v. Woods*, 26 F. App'x 448 (6th Cir. 2001), and *United States v. McCreary-Redd*, 475 F.3d 718 (6th Cir. 2007), to support his contention that his conduct is not indicative of an intent to distribute. But neither case supports the proposition that the district court's determination was clearly erroneous.

In *Woods*, we reversed the district court's application of a § 2K2.1(b)(6)(B) enhancement that was predicated on a finding of intent to distribute. 26 F. App'x at 452. That conclusion was reached because: (1) the 7.5 grams of marijuana in six small bags, each having a value of five

dollars was consistent with personal use; (2) no drug paraphernalia or money was found on the defendant or in the automobile; (3) the considerable drug trafficking in the area suggested the drugs may have been recently purchased; and (4) the presence of the weapon found in connection with such a small amount of marijuana did not suggest an intent to distribute. *Id.* at 451–52.

*Woods* stands in polar contrast to the facts of this case. First, the glaring disparity between the amount of marijuana here and the amount in *Woods* is obvious. Moreover, Massey's argument that the nearly 100 grams of marijuana in his possession was for personal use because he smokes every day is undercut by the fact that Woods was only in possession of 7.5 grams and also smoked "several marijuana-filled cigars, or 'blunts,' *every day*." *Id.* at 450 (emphasis added). In addition, Massey's stash was valued at $800, far more than the mere $30 worth in *Woods*. 26 F. App'x at 451. That said, the weapon located in Massey's duffle bag then takes on greater significance than the firearm in *Woods* when viewed in light of the fact that Massey had a large and valuable stash of drugs to protect, and Woods did not. *See Hardin*, 248 F.3d at 499 (noting that firearms are "tools of the trade" in drug transactions).

Second, unlike Woods, Massey had in his possession various items of drug distribution paraphernalia. Specifically, several cigarette rolling papers, a digital scale, and numerous empty plastic bags, which when coupled with the quantity of marijuana seized supports the logical inference that Massey had the ready means to repackage and sell his inventory. Viewed in isolation, many of the items found in Massey's possession may serve an innocuous purpose, as Massey posits, but taken together they are compelling evidence of drug distribution. Further, notwithstanding Massey's contentions, "[w]here there are two permissible views of the evidence," we are loath to accept the invitation to overturn a district court's choice between them. *See Anderson*, 470 U.S. at 573–74; *Darwich*, 337 F.3d at 663.

Massey nevertheless contends that, like Woods, he purchased the marijuana individually packaged from an unknown dealer in Ohio who was "going out of business and liquidating his stock." Fatal to this argument, however, is the stark reality that unlike Massey, Woods was stopped with a relatively "small amount of marijuana" in a drug haven where purchases were known to occur. 26 F. App'x at 451. Here, Massey was arrested in a rural area—not a known drug location— thereby distinguishing this case from *Woods* and extending the leap in logic required to conclude that Massey had recently purchased the drugs.

Massey's narrative becomes even more improbable when considering he was hundreds of miles from home, unlike Woods, and in possession of $300 in cash and $800 worth of marijuana, despite being unemployed. It is possible that Massey purchased the twenty-one packages of marijuana for personal use from a retiring drug dealer. But as the district court concluded, "it is more probable that he either bought them this way with the intent to sell them, or he is the one who packaged them in this way so that he could readily sell them." Such a finding by the district court is not clearly erroneous.

Turning to *McCreary-Redd*, that case involved the acceptance of a plea agreement—not a sentencing enhancement. The sole issue considered by this court was whether the district court's acceptance of the defendant's plea of guilty to possession with intent to distribute violated Rule 11 of the Federal Rules of Criminal Procedure. *See* 475 F.3d at 721, 723. Because the district court had neither read the indictment in open court, nor questioned the defendant regarding the intent to distribute element, the court was required to establish the factual basis for the charge by some other means in order to ensure that the defendant understood all the elements of the offense. *Id.* at 723– 25; *cf.* Fed. R. Crim. P. 11(b)(3) and (b)(1)(G). The factual basis relied upon by the district court was the parties' stipulated facts, which provided that incident to the defendant's arrest "officers

recovered a vial attached to [the defendant's] key chain which contained a quantity of cocaine base, also known as 'crack,' approximately 3.0 grams that was individually wrapped and packaged for resale." *McCreary-Redd*, at 724. In determining that this was insufficient to establish intent to distribute, we reasoned that given the "small quantity of drugs" and the fact that the defendant had entered a building in a neighborhood with illegal drug activity and was arrested upon exiting, one could equally conclude that the substance had been recently purchased for personal use. *Id.*

Aside from the different legal framework applied in *McCreary-Redd*, that case is inapposite. For many of the same reasons noted above that distinguish *Woods*, here, unlike McCreary-Redd, Massey was in possession of a substantially larger quantity of drugs, which were packaged into several smaller packages of nearly identical weight; he had the ready means to divide and repackage the remainder of his supply, and he was not in a high-drug-trafficking neighborhood. Although there is evidence, as the district court recognized, to support Massey's proposition that he did not intend to distribute the marijuana in question and instead it was solely for his personal use "it's more probable than not that [Massey] intended to sell at least some of it . . . just based on the quantity, the dollar amount and the nature of the packaging." Viewing the evidence collectively, the district court's possession-with-intent-to-distribute finding is not clearly erroneous.

### ii. The Nexus Between the Gun and the Felony Offense of Possession with the Intent to Distribute Marijuana

Because Massey pled guilty to the charge of being a felon in possession of a firearm, the only issue remaining is whether there exists a sufficient nexus between the gun and the other predicate felony—possession with intent to distribute marijuana. *Angel*, 576 F.3d at 321. This court has recognized that "demonstrating this nexus is not a particularly onerous burden." *United States v. Davis*, 372 F. App'x 628, 629 (6th Cir. 2010). To satisfy its burden the government relies

primarily on the "fortress" theory, contending that Massey's handgun facilitated his possession

with intent to distribute the marijuana. Massey maintains otherwise, arguing that the proximity of

the firearm to the marijuana in the duffle bag is insufficient. Although the district court's reasoning

on this issue is not clear from the record,[6] the evidence supports the court's finding that the gun

was used "in connection with" the established felony of possession with intent to distribute

marijuana.

The "fortress" theory is one factual situation where a firearm is said to be used "in

connection with another felony offense." *Jackson*, 877 F.3d 231. The fortress theory applies "if it

reasonably appears" that a firearm located on a "premises controlled or owned by a defendant and

in his actual or constructive possession" is "used to protect the drugs or otherwise facilitate a drug

transaction." *Angel*, 576 F.3d at 321. "[P]roximity between a firearm and drugs will suffice to

justify the enhancement when an offender is engaged in drug trafficking," while "in other cases

the enhancement applies only if the government can establish that the firearm actually or

_____

[6] At the sentencing hearing, Massey was seemingly concerned only with challenging the factual predicate for the other felony offense; namely, the sufficiency of the evidence for the intent to distribute element. This is because there is no discussion in the sentencing colloquy regarding the requisite "nexus" or "in connection with" element of § 2K2.1(b)(6)(B). Nonetheless, the district court found "by a preponderance of the evidence that the enhancement applie[d]." The sufficiency of the district court's stated findings with respect to the "in connection with" element is not properly before this Court. That issue is waived by virtue of Massey having failed to raise the argument in his brief pursuant to Fed. R. App. P. 28(a)(9)(A). *See, e.g., United States v. Mellies*, 329 F. App'x 592, 605 (6th Cir. 2009) (collecting cases). Moreover, although Massey asserted in his presentencing memorandum that there is an insufficient nexus between the gun and the marijuana, (R1 40, ID 177), at no time during the hearing was an objection made addressing whether the firearm was possessed "in connection with" the intent to distribute marijuana under subsection (b)(6). *See Angel*, 576 F.3d at 320–21. Massey cannot now bring his objection before this Court. When an unpreserved issue is present for the first time on appeal, we generally review it under the plain error standard. *See generally United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (*en banc*). We see no need to dwell on whether Massey's objection was preserved because under even an abuse of discretion standard of review, the district court did not err in applying the four-level enhancement under § 2K2.1(b)(6).

potentially facilitated that offense." *United States v. Shields*, 664 F.3d 1040, 1045 (6th Cir. 2011) (citations and internal quotation marks omitted); *see also Seymour*, 739 F.3d at 930 (discussing *Shields*). In other words, for the enhancement to apply the firearm and ammunition must have "had some emboldening role in [the] defendant's felonious conduct," *Ennenga*, 263 F.3d at 503 (citation and internal quotation marks omitted), or made the commission of the other felony "easier or less difficult." *United States v. Coleman*, 627 F.3d 205, 212 (6th Cir. 2010); *see also United States v. Huffman*, 461 F.3d 777, 788 (6th Cir. 2006).

Whether the possession of the firearm in question facilitated, or had the potential of facilitating, a drug trafficking offense involves a fact-specific inquiry and turns on a number of factors including: the proximity of the gun to the drugs; the existence of an innocent explanation for the firearm; the type of firearm and whether it is loaded, *Taylor*, 648 F.3d 417, 432 (6th Cir. 2011); the degree to which the defendant had "easy access" to the weapon, *Angel*, 576 F.3d at 321; *see also Hardin*, 248 F.3d at 501; and the amount of drugs and cash in proximity to the firearm. *See Seymour*, 739 F.3d at 930.

The PSR indicates that officers found a 9 mm Hi-Point handgun, a box containing 47 rounds of 9 mm ammunition, and a magazine loaded with 6 rounds of ammunition. The 9 mm handgun and the 53 rounds of ammunition were discovered in the same duffle bag, owned by Massey, where the 98.3 grams of marijuana, valued at $800, was kept in assorted individual packages with other drug paraphernalia.[7] Applying the "fortress" theory to these facts, we conclude the firearm facilitated or had the potential of facilitating the distribution of the supply of marijuana.

---

[7] Massey disputes whether the magazine was loaded into the gun as the government presented to the district court. However, the outcome of this case is unaffected by whether the gun was loaded or not, as there are ample facts in the record to support the § 2K2.1(b)(6) enhancement.

The circumstances here are similar to those cases where application of the fortress theory has been held appropriate. In *United States v. Richardson*, 510 F.3d 622, 626–27 (6th Cir. 2007), we concluded that the § 2K2.1(b)(6) enhancement was warranted where the defendant was arrested in a motel room with his girlfriend, and authorities found a stolen gun and two to three grams of marijuana in his pocket, along with 116.5 grams of marijuana and digital scales in his girlfriend's purse. *Id.* at 624. Similarly, in *Hardin*, 248 F.3d at 501, the enhancement imposed by the district court was upheld under the fortress theory where the defendant was arrested in a bedroom with his wife, and 54 grams of cocaine and a bag of marijuana were found on the nightstand, along with two ammunition magazines and a pistol registered to the defendant's wife, which was purportedly used for her protection. *Id.* at 491. And the enhancement was upheld in *Angel*, after agents discovered marijuana plants growing on the property and later found in the defendant's upstairs bedroom that he shared with his wife: 81.2 grams of processed marijuana in two containers on the floor, drug paraphernalia, and assorted ammunition, as well as a shotgun and two handguns propped next to the night stand. 576 F.3d at 319; *see id.* at 322. Finally, *James v. United States*, 217 F. App'x 431 (6th Cir. 2007), bears striking resemblance to the case at hand. There, the four-level enhancement was applicable where the defendant, the 33 grams of marijuana, and the gun were simultaneously in the vehicle, and the gun and the marijuana were actually next to each other hidden under the same car seat. *Id.* at 433, 438–39. In each of these cases the firearm was deemed to have been used "in connection with" the other felony despite that there was no evidence that the defendant fired, brandished, or even handled the weapon in the course of a drug transaction.

By contrast, this court has been hesitant to rely on the fortress theory "in cases that involve simple possession of smaller amounts of drugs." *Seymour*, 739 F.3d at 930–31. But this case does not involve the small quantity of drugs that has given this court pause in the past.

In *Seymour*, we declined to apply the fortress theory because the defendant had only 2.4 grams of cocaine and five hydrocodone tablets in his possession, and nothing in the record established that he was engaged in any sort of narcotics trafficking. *Id.* at 926, 930–31. Likewise, in *Shields*, the fortress theory did not support the firearm enhancement where the defendant possessed only 4.2 grams of marijuana and a baggy with cocaine residue because there was no further evidence of trafficking or that the gun was used to protect the drugs. *Shields*, 664 F.3d at 1044, 1046; *see also United States v. McKenzie*, 410 F. App'x 943, 946–47 (6th Cir. 2011) (rejecting application of the "fortress theory" when the defendant possessed only 1.1. grams of marijuana, a few dollars' worth meant for personal use, and there was no evidence that he was engaging in trafficking of marijuana). A *de minimis* drug quantity, however, does not necessarily foreclose application of the fortress theory, as this court has applied the doctrine where the defendant was arrested in an uninhabited apartment allegedly to have his hair braided late at night and was in possession of only 1.6 grams of cocaine, a large amount of cash, and a firearm. *United States v. Clay*, 346 F.3d 173, 179 (6th Cir. 2003); *see id.* at 175.

On balance, this case more closely tracks the facts in those cases where the fortress theory has been applied. The large amount of cash and marijuana in close proximity to the firearm, particularly in light of Massey's unemployment status at the time, support application of the enhancement. Moreover, in addition to the disparity in drug quantity that distinguishes this case from *Seymour*, *Shields*, and *McKenzie*, in those cases the record was devoid of any evidence of paraphernalia or drug trafficking. Here, a scale, various individualized packages of marijuana, and empty plastic bags were all found in Massey's possession next to a firearm and a stockpile of ammunition. Logically then, the readily accessible firearm "facilitated, or had the potential of facilitating," Massey's ability to protect or carry out a modest drug trafficking operation. *Cf.*

U.S.S.G. § 2K2.1 cmt. n.14(A). Indeed, "[w]hen one is in possession of a large and valuable stash of drugs, the desire to protect these illicit substances can be compelling." *Ennenga*, 263 F.3d at 504; *Hardin*, 248 F.3d at 500 (holding that the fortress theory was applicable where it "reasonably appear[ed]" that the gun was used to protect the drugs, given that the drugs and firearm were found in the same location). Even by Massey's own admissions, the apparent connection between the gun and the marijuana is evident, as the district court explained that Massey ran as a result of "weed and a gun."

Taken together and viewed under the deferential standard applied to § 2K2.1(b)(6) enhancements, the undisputed facts support the district court's conclusion that Massey unlawfully possessed a firearm in connection with drug trafficking. Therefore, the district court's application of the § 2K2.1(b)(6) enhancement was not clearly erroneous.

## B. The District Court Did Not Err in Imposing the Consecutive Sentence.

Massey also asserts that the 8-month consecutive sentence imposed for his admitted supervised release violation was procedurally unreasonable. In support, Massey argues the district court failed to consider applicable sentencing factors in U.S.S.G. § 5G1.3 or provide any explanation for the consecutive nature of the sentence. We disagree.

Sentencing challenges are generally reviewed for an abuse of discretion. *United States v. McFalls*, 675 F.3d 599, 606 (6th Cir. 2012). "A court will be deemed to have abused its discretion and imposed a procedurally unreasonable sentence if it failed to calculate the Guidelines range properly; treated the Guidelines as mandatory; failed to consider the factors prescribed at 18 U.S.C. § 3553(a); based the sentence on clearly erroneous facts; or failed to adequately explain the sentence." *Coppenger*, 775 F.3d at 803 (citing *Adkins*, 729 F.3d at 563).

At sentencing, Massey requested that any sentence imposed for the supervised release violation run concurrently. He did not, however, object to the district court's setting his supervised release violation sentence to run consecutively to his firearm sentence. Where a defendant has "failed to preserve [a] procedural objection by first giving the district court the opportunity to address and remedy it, we review only for plain error." *Coppenger*, 775 F.3d at 803; *cf. United States v. Olano*, 507 U.S. 725, 731–32 (1993). "[A] silent defendant has the burden to satisfy the plain-error rule and . . . a reviewing court may consult the whole record when considering the effect of any error on substantial rights." *United States v. Vonn*, 535 U.S. 55, 59 (2002).[8] Not only does Massey fail to meet his burden under plain error review, but his appeal falters under the more lenient abuse of discretion standard.

A district court generally has "discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings." *See Setser v. United States*, 132 S. Ct. 1463, 1468 (2012); 18 U.S.C. § 3584(a). In making this determination, the district court must consider the factors listed in 18 U.S.C. § 3553(a), the recommendations of the Guidelines, and any relevant policy statement issued by the Sentencing Commission. *United States v. Johnson*, 553 F.3d 990, 997 (6th Cir. 2009) (citing 18 U.S.C. § 3553(a)(4)). This mandate is satisfied if the record establishes that the district court "turned its attention" to § 5G1.3 and the applicable commentary, *id.* at 998 (quoting *United States v. Covert*, 117 F.3d 940, 945 (6th Cir. 1997)), and made "generally clear the rationale under

---

[8] To prevail under plain error review, an appellant must prove: (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights, such that there is a reasonable probability that, but for the error, a more favorable sentence would have been imposed; and (4) that the adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Coppenger*, 775 F.3d at 803, 807; *United States v. Wilson*, 614 F.3d 219, 223 (6th Cir. 2010).

which it has imposed the consecutive sentence." *Id.* (quoting *United States v. Owens*, 159 F.3d 221, 230 (6th Cir. 1998)).

Section 5G1.3(d) is the relevant provision here, as that section applies in cases in which the defendant's supervised release is revoked. § 5G1.3 cmt. n.4(C). In determining whether a concurrent or consecutive sentence will "achieve a reasonable incremental punishment," Application Note 4(A) instructs the court to consider:

(i) the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a));

(ii) the type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;

(iii) the time served on the undischarged sentence and the time likely to be served before release;

(iv) the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and

(v) any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

§ 5G1.3 cmt. n.4(A). Recognizing the advisory nature of the Guidelines, *e.g.*, *United States v. Booker*, 543 U.S. 220, 246 (2005), the Sentencing Commission provides further guidance for situations involving revocation of supervised release and "recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation." § 5G1.3 cmt. n.4(C); *see also* § 7B1.3(f) ("Any term of imprisonment imposed upon the revocation of . . . supervised release shall be ordered to be served consecutively"); *cf. United States v. Johnson*, 640 F.3d 195, 208 (6th Cir. 2011) ("This policy statement is not binding on the district court").

Massey maintains that the district court never mentioned U.S.S.G. § 5G1.3 or reviewed the list of factors under 18 U.S.C. § 3553(a) relating to the supervised release violation. This argument is without merit. As this court has repeatedly confirmed, a sentencing court need not explicitly

reference § 5G1.3 "if there is some other evidence in the record that it considered the section." *See United States v. Hall*, 632 F.3d 331, 336 (6th Cir. 2011). In that same vein, a district court is not required to state a "specific reason for a consecutive sentence." *United States v. Cochrane*, 702 F.3d 334, 346 (6th Cir. 2012) (quoting *Johnson*, 640 F.3d at 208–09). This does not mean a district court may say nothing at all. Rather, a sentencing court "may incorporate by reference a discussion of the relevant considerations in another document such as the Presentence Report" or "make clear that its reasons for choosing a substantive sentence and for running two sentences consecutively are the same." *Id.*

Before imposing the sentences at Massey's hearing, the court observed that the advisory Guidelines calculations were accurately reflected in the PSR and stated that it had reviewed both the PSR and the supervised release report. Further, the court discussed with the parties whether the sentence for the supervised release violation must run consecutive to the firearm violation, and concluded that "it's not a, what I'll call mandatory – mandated by Congress like a mandatory minimum." As a result, Massey requested that the sentences for both the firearm conviction and the supervised release violation run concurrently.

The district court then "turned its attention" to § 5G1.3 by explicitly invoking 18 U.S.C. § 3553(a) as "[t]he touchstone of sentencing." Although the court did not specifically mention § 5G1.3, in the sentencing colloquy the court explained to Massey its obligation "to consider everything . . . about you . . . about the – this new offense[,] plus the supervised release violation, and give you a sentence that's sufficient but not longer than necessary to meet the statutory purposes of sentencing which are punishment, deterrence, protecting the community, and rehabilitation" (suggesting consideration of 18 U.S.C. § 3553(a)(2)). When the court imposed a sentence of 57 months' imprisonment for the firearm violation, the court noted that Massey served

"four or five years in prison. Unfortunately, you [Massey] got right out and started using and circumstantially dealing marijuana and you had a gun, so I have to punish and deter others" (indicating consideration of 18 U.S.C. § 3553(a)(1)). (*Id.* at ID 243).

When the time came to sentence Massey on the supervised release violation, the court informed him that "the range is eight to 14 months" (satisfying consideration of 18 U.S.C. § 3553(4)). *Id.* Then, when explaining why it set Massey's supervised release violation sentence to run consecutively to his possession of a firearm sentence, the district court stated that:

> I almost always, virtually always apply at least some of the sentence consecutive to the new offense. Otherwise there's no additional punishment. And the point is the Judge in this case in the Eastern District of Pennsylvania was responsible to the community for you, and you betrayed that trust by committing a new violation.

Although this statement is brief, in light of this rather specific reasoning offered, and in connection with the court's reference to the PSR, § 3553(a), the nature of the offense, Massey's criminal record, and the type of sentence that could be imposed, it is evident that district court considered § 5G1.3(d), along with § 3553(a), and adequately explained its rationale for imposing the consecutive sentence. Contrary to Massey's position, this court has "never held that a district court is required to repeat a Section 3553(a) analysis in its consideration of the consecutive or concurrent nature of a sentence." *Berry*, 565 F.3d at 343. The sentencing colloquy in this case stands in bold contrast to that in *United States v. Cochrane*, the case upon which Massey relies, where there was no discussion of the relevant sentencing considerations and no reason provided at the hearing for the imposition of the consecutive sentence. 702 F.3d at 346–47. Instead, there the court simply imposed the consecutive sentence without further discussion. *Id.* at 340. As the record makes clear, that is not the case here. The district court satisfied the requirements for procedural reasonableness by referencing the relevant sentencing considerations and offering an adequate explanation for

ordering the sentence to run consecutively. Accordingly, the district court did not abuse its discretion by imposing the 8-month consecutive sentence.

IV.

The government proved, by a preponderance of the evidence, that Massey possessed a firearm "in connection with" his possession of marijuana with intent to distribute. The district court accordingly properly applied a four-level enhancement to his sentence. As to the consecutive sentence imposed for Massey's supervised release violation, the district court satisfied the requirements for procedural reasonableness.

We therefore, **AFFIRM**.