NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0112n.06

No. 23-1146

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Mar 11, 2024

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| DAVANTI DIAMON HEARD-WHITE, | ) | |
|     Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; SUHRHEINRICH and MURPHY, Circuit Judges.

SUHRHEINRICH, Circuit Judge.  Wiretaps proved very useful in the prosecution of Defendant Davanti Diamon Heard-White.  Through intercepted calls, law enforcement learned that Defendant was supplying codefendant John Humphrey, a drug trafficker in the Lansing, Michigan area, with lots of methamphetamine.  Defendant pleaded guilty to conspiracy to distribute methamphetamine and to being a felon in possession of a firearm.  On appeal he claims that his sentence is procedurally and substantively unreasonable and that his 18 U.S.C. § 922(g)(1) conviction violates the Second Amendment.  We affirm.

**I.**

In April 2021, federal, state, and local law enforcement began investigating Humphrey's drug trafficking organization.  Through various forms of surveillance, including court-authorized wiretaps, they learned that Defendant was Humphrey's methamphetamine supplier.  On July 1, 2021, Humphrey asked Defendant for four pounds of methamphetamine.  Defendant told

Humphrey that he stored his drugs at the house of his brother Demetrius Heard in Lansing because that was "the only place I'm comfortable [with]." Defendant also told Humphrey that he was going to have "bro" give the methamphetamine to Lake. (R.473-6, PID 4084. They eventually agreed that Defendant would bring Humphrey four pounds of methamphetamine. Defendant honored Humphrey's request on July 3, 2021.

On July 20, 2021, Defendant provided Humphrey with four more pounds of methamphetamine. Defendant directed Humphrey's courier, Arnon Lake, to Heard's residence. Lake picked up the methamphetamine from Heard, and let Humphrey know that "it's four."

Meanwhile, on July 19, 2021, the Michigan State Police stopped Defendant for speeding and arrested him for an outstanding warrant. During a search incident to arrest, they found a 9 mm semiautomatic pistol in the glovebox. This was a problem for Defendant because he had a prior felony conviction.

On August 3, 2021, law enforcement executed a search warrant at Heard's residence. They found 6.244 kilograms of 100% pure methamphetamine, 2.445 grams of a mixture containing fentanyl, over $3,000, and two loaded firearms. One town over, in Holt, Michigan, officers arrested Defendant. Prior to the arrest they observed Defendant leave his house and place an object in the backseat of the car in his driveway, which a neighbor later reported was a Draco-style pistol. Officers also observed a woman exit Defendant's residence and place an assault-style weapon in the car. After they arrested Defendant and conducted a search incident to arrest, the officers discovered in plain view a Draco-style pistol and another firearm in the car. They also seized approximately $40,000 in cash. They confiscated $6,945 from Lake the same day too.

A grand jury indicted Defendant, Humphrey, Heard, Lake, and three others on September 22, 2021, with conspiracy to distribute and possess with intent to distribute 50 grams or more of

methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B)(viii) (Count 1). A few months later, Defendant was also charged with felon in possession of a firearm on July 19, 2021, in violation of 18 U.S.C. § 922(g)(1) (Count 2), and felon in possession of firearms on August 3, 2021 (Count 7), in violation of 18 U.S. C. § 922(g)(1).

Heard and Lake were tried and convicted of the conspiracy charge. Defendant ultimately pleaded guilty to a felony information charging him with conspiring to distribute methamphetamine (Count 1) and being a felon in possession of a firearm (Count 2). In the plea agreement[1] Defendant waived his right to raise in the district court "or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that could have been filed." Defendant also waived his right to appeal and bring collateral attacks, with certain exceptions.

The presentence report[2] set Defendant's total offense level at 40. It started with a base offense level of 38 under USSG § 2D1.1(a)(5), (c)(1), added five levels for possessing a firearm under USSG § 2D1.1(b)(1) and for his role as a manager or supervisor, and then suggested a three-level reduction for acceptance of responsibility. With a criminal history score of three based on his prior federal conviction, Defendant's criminal history category was II. This resulted in an advisory guidelines range of 324–405 months. Defendant made two objections at the sentencing. First, Defendant claimed that the evidence did not support the finding that he had supervised his brother. Second, he argued that the 10:1 methamphetamine-to-ice ratio in USSG § 2D1.1(c) should not apply.

---

[1] Because Defendant's prior plea agreement and its withdrawal are not relevant on appeal, we refer to this simply as the "plea agreement" rather than the "amended plea agreement."

[2] There is an earlier version of this report. We refer to this simply as the "presentence report."

At the sentencing hearing, Defendant argued that there was no evidence that he "recruited" Heard or "controlled or managed his brother." He claimed that Heard let him store his drugs at the house but acknowledged that Heard likely benefitted financially from the arrangement. The government responded that "[w]ire taps and other evidence show the defendant had a supervisory role, at least over his brother in that location," which the jury in Heard's trial found was Defendant's "main stash location." The government also referenced the July 1 and July 20, 2021, wiretaps, Government Exhibits 11 and 25 in Heard's trial, in which Defendant stated that he was only comfortable leaving his drugs at his brother's place and that he would have his brother deliver some drugs. Finally, the government noted that Defendant's cash-on-hand, $40,000, was significantly more than an "average participant" like Lake, "who had about $7,000 on hand."

The district court concluded that the aggravated role enhancement was proper based on the government's evidence and added several facts of its own. The court found it significant that "[D]efendant selected the location and timing of sales to Mr. Humphrey, set the prices for the drugs involved in the offense, the conspiracy clearly involved at least five people, and [Defendant] directed or recruited at least one of those individuals, specifically his brother." The court concluded that Defendant was a manager or supervisor rather than an organizer or leader. The court also stated that it did not have a policy disagreement with the 10:1 treatment of ice to methamphetamine.

The court sentenced Defendant to 324 months on the conspiracy count and 120 months on the felon-in-possession count, to run concurrently. Upon the court's inquiry, Defendant stated that he had no further legal objections to the sentence imposed.

This appeal follows.

**II.**

We review sentencing decisions "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). An abuse of discretion occurs when a sentence is procedurally or substantively unreasonable. *Id.* at 51.

**A.**

A sentence is procedurally unreasonable if the district court improperly calculated the Guidelines range or selected a sentence based on clearly erroneous facts. *Id.* A "court relies on clearly erroneous facts when the sentencing judge relies upon erroneous information and the information in question appears to have been an important factor in determining the sentence." *United States v. Cunningham*, 669 F.3d 723, 730 (6th Cir. 2012) (cleaned up).

1.

Defendant argues his sentence was procedurally unreasonable because "the facts or issues on which the district court relied . . . came as a surprise and [Defendant's] presentation to the court was prejudiced by the surprise." *United States v. Coppenger*, 775 F.3d 799, 804 (6th Cir. 2015) (citation omitted). At sentencing, the district court relied on Government Exhibits 11 and 25 from Heard's and Lake's trial. These trial exhibits were not identified in the presentence report or provided to Defendant. Because Defendant did not object below, however, our review is limited to plain error. *See United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). Under that standard, we reverse only if we find (1) an error, that (2) is plain, (3) affects substantial rights, and (4) jeopardizes the fairness or integrity of judicial proceedings. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).

We find no error because the disputed facts were not "surprising" and were "reasonably foreseeable." *See United States v. Zabel*, 35 F.4th 493, 506 (6th Cir. 2022) (citation omitted). The presentence report states that Defendant "recruited and directed his brother, Mr. Heard, while receiving a greater share of the profits and is considered a manager or supervisor." When Defendant objected in his sentencing memorandum that "[s]uch evidence does not exist," probation officer reiterated that the enhancement was proper because Defendant "either recruited his brother to store drugs at his home or directed him where they were to be stored." Granted, the addendum did not identify the evidence that supported that assertion, but the continuation of the criminal complaint (i.e. DEA Edwin G. Parrott's affidavit) did—it outlined the calls captured in Exhibits 11 and 25. *Compare* R. 1-1, PID 18–20, 79-84, *with* R. 473-1, PID 4069 *and* R. 473-6, PID 4084). In short, the issue of Defendant's role in the organization was not "novel" and the evidence of that role was "signaled" in the continuation of the criminal complaint. *Cf. Coppenger*, 775 F.3d at 804 (vacating sentence where district court considered a novel theory that was "neither signaled in the presentence report nor otherwise reasonably foreseeable"). Not surprisingly, the government offered "such evidence" at the sentencing hearing. Defendant did not act surprised at the time or claim prejudice. *See United States v. McCaskill*, 202 F. App'x 70, 79 (6th Cir. 2006) (holding that the district court could not be faulted for admitting at sentencing government exhibits not provided to the defendant beforehand because the defendant did not claim surprise, objecting simply on hearsay grounds). So, it's hard to find any surprise or prejudice now and thus any plain error.

One more point: Defendant argues that when he referred to "bro," he did not necessarily mean his brother or anyone in the conspiracy. Assuming Defendant was not supervising his actual brother, however, the tapes revealed that he directed *somebody* in the house where he felt

comfortable storing large amounts of methamphetamine to hand drugs over to Humphrey or Humphrey's agent. Thus, he was supervising at least one other person participating in the conspiracy.

2.

Defendant complains that the district court erred in applying the aggravated role enhancement, which applies when "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." USSG § 3B1.1(b). Factors to consider include "the degree of participation in planning or organizing the offense," "the claimed right to a larger share of the fruits of the crime," and "the degree of control and authority exercised over others." USSG § 3B1.1 cmt. n.4. We have held that to qualify for the enhancement under USSG § 3B1.1, the defendant must have exerted control over at least one other person, *United States v. Lalonde*, 509 F.3d 750, 765 (6th Cir. 2007), "and not merely the criminal scheme," *United States v. Kamper*, 748 F.3d 728, 748 (6th Cir. 2014). Simply buying drugs from or selling drugs to a drug trafficking organization does not alone confer manager status. *United States v. Schultz*, 14 F.3d 1093, 1099 (6th Cir. 1994).

As discussed above, the evidence supported the district court's finding that Defendant stored his methamphetamine at his brother's residence, instructed his brother (or another "bro" of the conspiracy) to deliver it to others, and directed others to Heard's residence for pickup. As the district court found, he did not simply supply methamphetamine; he made decisions and directed others. He received a much larger share of the profits than other participants—$40,000—when compared to Lake's $7,000 and Heard's $3,000. And, contrary to his claim, the court was reasonable in concluding that, at least some of the time, when Defendant referenced "bro" he meant Heard, especially since he stored over 6.2 kilograms of methamphetamine at Heard's residence.

Defendant asserts that this case is "strikingly similar" to *United States v. Hunsaker*, 65 F.4th 1223 (10th Cir. 2023), where the court vacated the defendant's aggravated role enhancement under USSG § 3B1.1(b) for lack of evidence. It's not. In that case, the court concluded that a coconspirator's statement that the defendant was "second in command" of a drug trafficking organization was a conclusion, not a fact. *Id.* at 1229. Moreover, the statement was never made part of the record. *Id.* at 1230. The defendant's close relationship with the leader also did not confer manager status, because none of his actions were "evidence of [] decision-making authority or control over a subordinate." *Id.* This case is like *United States v. Griffin*, 829 F. App'x 108 (6th Cir. 2020) (per curiam), where we affirmed an aggravated role enhancement because there was testimony that the defendant was not only a supplier, but also "arranged and directed the drug-related activities of several co-defendants," such as delivering drugs and collecting drug proceeds. *Id.* at 110. Here, the wiretaps establish Defendant's managerial role in the conspiracy.

**B.**

A sentence is substantively unreasonable if the district court improperly weighs the 18 U.S.C. § 3553(a) factors resulting in a sentence that is "too long." *See United States v. Mosley*, 53 F.4th 947, 964–65 (6th Cir. 2022). Defendant argues his sentence is substantively unreasonable because the court used the 10:1 methamphetamine ratio in USSG § 2D1.1, which ties offense level to purity for certain drugs, including methamphetamine. *See generally United States v. Johnson*, 812 F. App'x 329, 331–32 (6th Cir. 2020) (explaining that USSG § 2D1.1(a)(5) & (c) provides graduated base offense levels depending on the purity and quantity of methamphetamine). A 1:1 ratio would have made Defendant's guidelines imprisonment range 210 to 262 months.[3] He argues

---

[3] A 1:1 ratio would have made Defendant's base offense level 34. With the same specific offense characteristics and Chapter Three adjustments, the total offense level would have been 36.

that the 10:1 ratio is unfair because purity is correlated—mistakenly—with the defendant's role in the offense, which is already accounted for under the aggravated role enhancement. As Defendant points out, several courts have agreed with this view. But, as *Mosley* noted, this "challenge to the 10:1 methamphetamine-mixture ratio amounts to little more than a policy disagreement with the Guidelines, which the district court had discretion to reject." 53 F.4th at 965. The district court in this case stated on the record that it "d[id not] have a policy disagreement with the treatment of ice methamphetamine." Thus, as in *Mosley*, we find no abuse of discretion. *See id.* (involving the same district court); *see also Johnson*, 812 F. App'x at 334 (holding that "[t]he district court did not abuse its discretion by choosing *not* to disagree with the 10:1 ratio in the Guidelines on policy grounds").

## C.

Newly minted on appeal is Defendant's argument that we should vacate his § 922(g)(1) conviction because the statute violates the Second Amendment in the light of the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*. 597 U.S. 1, 17 (2022).[4]

This court has relied on *District of Columbia v. Heller*, 554 U.S. 570 (2008), to repeatedly hold that felon-in-possession prohibitions do not violate the Second Amendment. *See United States v. Goolsby*, No. 21-3087, 2022 WL 670137, at *2-3 (6th Cir. Mar. 7, 2022) (upholding § 922(g)(1) conviction; listing cases); *United States v. Khami*, 362 F. App'x 501, 507–08 (6th Cir. 2010) (upholding § 922(g)(1)); *see also United States v. Bacon*, 884 F.3d 605, 611-12 (6th Cir. 2018) (upholding § 922(d) conviction).

---

[4] Defendant brings both a facial and an as-applied challenge.

Defendant concedes that plain error review applies here because he did not raise this issue in the district court. He argues that the waiver language in his plea agreement does not impede our review because that language "did not specifically waive challenges to the statutory provision under which he was convicted." (citing *Class v. United States*, 583 U.S. 174, 176 (2018) (holding that "a guilty plea by itself" does not bar a defendant from challenging the constitutionality of the statute of conviction on appeal)).[5] The government insists that the waiver language encompasses this issue and bars our review. *See generally United States v. Toth*, 668 F.3d 374, 377–78 (6th Cir. 2012).

We sidestep Defendant's possible waiver problem because of his certain forfeiture problem. To satisfy the demanding plain error standard of review, the statute in question must be "*obviously* unconstitutional." *United States v. Al-Maliki*, 787 F.3d 791, 794 (6th Cir. 2015) (emphasis in original). Stated a different way, an error is plain if it "is clear under current law." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). In view of the difference of opinion within the circuits, that is difficult to show here. A circuit split, like we have here, "precludes a finding of plain error." *Id*. And without a finding of plain error, we cannot provide Defendant with relief on this issue. *Cf.* United States v. Bowers, No. 22-6095, 2024 WL 366247, at *3 (6th Cir. Jan. 31, 2024) (upholding a defendant's conviction on plain error review because "[n]o binding case law addresses the constitutionality of § 922(g)(1) in light of Bruen"); *United States v. Ramadan*, No. 22-1243, 2023 WL 6634293, at *3 (6th Cir. Oct. 12, 2023) (upholding the defendant's § 922(j) & (k) convictions on plain error review because post-*Bruen* "there is no

---

[5] Defendant also argues in the alternative that we should find ineffective of counsel. This argument is premature at this point and can be raised in a 28 U.S.C. § 2255 proceeding. *See United States v. Zheng*, 27 F.4th 1239, 1243 (6th Cir. 2022).

binding case law or 'good evidence' before this court showing that the statutes are clearly unconstitutional under current law") (citation omitted).

### III.

We affirm.